Larry GIBSON, Petitioner,

v.

NYE FRONTIER FORD, INC., and
Nye Frontier Lincoln Mercury,
Inc., Respondents.

No. S–13064.

Supreme Court of Alaska.

April 3, 2009.

Kenneth W. Legacki, Kenneth W. Legacki, P.C., Anchorage, F. Paul Bland, Jr., Public Justice, P.C., Washington, D.C., for Petitioner.

Jeffrey A. Friedman, Friedman, Rubin & White, Anchorage, for Respondents.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

MATTHEWS, Justice.

An employee was ordered by the superior court to arbitrate his Alaska Wage and Hour Act claim under an arbitration agreement that is governed by the Federal Arbitration Act. He contends that the arbitration agreement is unconscionable for three reasons: (1) it is subject to unilateral change by the employer; (2) it has a $50,000 appellate threshold that favors the employer; and (3) it requires the employee to pay arbitration costs that he would not have to pay if his claim were prosecuted in superior court. We conclude that (1) the agreement is not subject to unilateral change; (2) the $50,000 appellate threshold clause is unconscionable but severable from the agreement; and (3) arbitration costs may not be imposed on the employee. As a consequence of these conclusions, we hold that arbitration may be required under the agreement only if the employer agrees to pay the arbitration costs.

## I. FACTS AND PROCEEDINGS

Larry Gibson filed suit against his former employers, Nye Frontier Ford, Inc., and Nye Frontier Lincoln Mercury, Inc. (collectively Nye), in the superior court seeking to recover unpaid overtime compensation and liquidated damages under the Alaska Wage and Hour Act (AWHA). Gibson alleged he was owed in excess of $100,000 in unpaid overtime compensation for work performed between 2005 and 2007. He sought compensatory damages plus an equal amount of liquidated damages, as well as costs and attorney's fees allowed under the AWHA.

Nye answered and interposed three affirmative defenses. Nye claimed that Gibson was exempt from the overtime provisions of the AWHA because he held an "executive, managerial, or administrative" position; that part of his claim was barred by the statute of limitations; and that his claim was subject to an arbitration agreement.

Nye moved to stay the superior court proceedings pending arbitration. Gibson opposed this motion, arguing in part that the arbitration agreement between the parties was not enforceable because it was unconscionable and would potentially require him to pay part of the arbitration costs, contrary to the policy of the AWHA. Nye responded that the arbitration agreement was not unconscionable and acknowledged that Gibson would likely be asked to pay one half of the arbitration costs, but argued that these would be relatively modest and that Gibson had not met his burden of showing that this requirement would preclude him from vindicating his rights under the AWHA. The superior court entered an order staying proceedings pending arbitration. From this order Gibson filed a petition for review. We granted review.

## II. DISCUSSION

### A. Contract Documents

The arbitration clause at issue is found on the final two pages of the forty-five page Nye employee handbook. We set forth the text of the last two pages, including the caption and attestation clause, numbering each paragraph for ease of reference:

*Employee Acknowledgement and Agreement*

█ This will acknowledge that I have received my copy of the NYE FRONTIER LINCOLN MERCURY [1] Employee Handbook and that I will familiarize myself with its contents.

█ I understand that this Handbook represents the current policies, regulations, and benefits, and that except for em-

---

1. The same Employee Acknowledgement and Agreement was used in the Nye Frontier Ford handbook.

ployment at-will status, any and all policies and practices can be changed at any time by the Dealership. The Dealership retains the right to add, change or delete wages, benefits, policies and all other working conditions at any time (except the policy of "at-will employment" which may not be changed, altered, revised or modified without a writing signed by the Owner of the Dealership).

■ I understand that nothing in the Employee Handbook creates or is intended to create a promise or representation of continued employment and that employment at Nye Frontier Lincoln Mercury is employment "At–Will", that may be terminated at the will of the Dealership or myself. I understand that I have the right to terminate my employment at any time, with or without cause or notice and that the Dealership has a similar right. I further understand that my status as an "At–Will" employee may not be changed except in writing signed by the Owner of the Dealership. My signature below certifies that I understand the foregoing agreement and that "At–Will" status is the sole and entire agreement between the Dealership and myself concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings and representations (whether written or oral) concerning my employment with the Dealership.

■ I agree that any claim, dispute, or controversy which would otherwise require or allow resort to any court or other governmental dispute resolution forum (including, but not limited to any and all claims of discrimination, harassment or any other complaint based on the employment relationship or the termination of same), between myself and the Dealership (or its owners, directors, and officers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Dealership, whether based on tort, contract, statutory, or

equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with applicable state laws, provided, however, that: In addition to requirements imposed by law, any arbitrator herein shall be a retired Alaska Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. It is the intent of this arbitration clause to provide for the inexpensive, speedy and just resolution of all such disputes. To this end, discovery shall be limited to the extent permissible.

■ Resolution of the dispute shall be based solely upon the law governing the claims and defenses pled, and the arbitrator may not invoke any basis other than such controlling law to decide the dispute. As reasonably required to allow full use and benefit of this agreement's modifications to the Act's procedures, the arbitrator may extend the times set by the Act for the giving of notices and setting of hearings. Awards exceeding $50,000.00 shall include the arbitrator's written reasoned opinion and, at either party's written request within 10 days after issuance of the award, shall be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review by the Alaska Supreme Court of a civil judgment following court trial. I understand by agreeing to this binding arbitration provision, the company and I give up our rights to trial by jury.

■ MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS.

/s/ Larry Gibson
Print Full Name

/s/ Larry Gibson
Signature
8/1/05
Date

## B. Contentions Under Review

Gibson raises three main points in his petition. He contends that the arbitration agreement is unconscionable because it may be unilaterally modified by Nye at any time. Further, he argues that the $50,000 threshold for appellate review by a second arbitrator is unfairly one-sided because it operates "wholly for the benefit of Nye." His third point is that the arbitration clause conflicts with the policy of the AWHA by subjecting him to a charge of one half of the costs of arbitration, including the arbitrator's fee.

Nye responds that it does not have the power to unilaterally change the arbitration agreement because the arbitration agreement is distinct from other provisions of the handbook. With respect to the $50,000 threshold for appellate review, Nye argues that this is not unreasonably one-sided because Nye might have claims against employees; if so and if Nye were awarded more than $50,000, employees would benefit from the right to appeal. Nye argues alternatively that if this court finds the appellate threshold unconscionable, it should be severed and the remainder of the arbitration agreement should be enforced. Concerning the prospect that Gibson will have to pay half of the arbitration costs, Nye asserts that under binding federal case law,[2] Gibson had the burden to show that the imposition of arbitration costs would be prohibitively expensive and that he did not discharge this burden.

## C. Applicable Statutes

■ Gibson's claim is brought under the AWHA, AS 23.10.050–.150. The AWHA requires the payment of overtime compensation for covered employees and generally allows as an addition to unpaid overtime compensation an equal amount of liquidated damages.[3] In actions brought by private claimants the court is required, "in addition to a judgment awarded to the plaintiff," to "allow costs of the action."[4] If the plaintiff prevails, the court is also to award the plaintiff actual attorney's fees so long as they are reasonable.[5] On the other hand, if the plaintiff does not prevail the employer is not ordinarily entitled to an award of attorney's fees.[6] All of these rights are substantive.[7] Substantive rights afforded workers under the AWHA may neither be waived in advance by contract nor compromised after a claim is asserted without judicial approval.[8] But this does not mean that AWHA claims can only be adjudicated in court. As the United States Supreme Court has observed:

> "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.... [S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."[9]

The Federal Arbitration Act[10] (FAA) also applies to this case. The FAA applies to "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction," and provides that covered arbitration agree-

**2.** *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

**3.** AS 23.10.060, AS 23.10.110(a).

**4.** AS 23.10.110(c).

**5.** AS 23.10.110(e); *Bobich v. Stewart,* 843 P.2d 1232, 1237–38 (Alaska 1992).

**6.** AS 23.10.110(f). Also, nowhere in AS 23.10.110 is there a provision allowing an award of "costs of the action" to a prevailing defendant.

**7.** *State v. Native Vill. of Nunapitchuk,* 156 P.3d 389, 402–03 (Alaska 2007) (explaining that "intertwined" fee-shifting provisions are substantive because "[t]hey are usually designed to encourage suits that, in the judgment of the legislature, will further public policy goals").

**8.** *McKeown v. Kinney Shoe Corp.,* 820 P.2d 1068, 1070–71 (Alaska 1991).

**9.** *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26–28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)) (internal quotation marks omitted).

**10.** 9 U.S.C. § 1 *et seq.*

ments "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." [11] The "save upon such grounds" clause has been construed to mean that state law grounds for refusing to enforce contracts in general will also apply to arbitration clauses, while state law grounds particular to arbitration clauses cannot so serve.[12]

 The FAA evinces a strong policy in favor of the arbitration of disputes.[13] Alaska's Uniform Arbitration Act and Revised Uniform Arbitration Act reflect the same policy at the state level.[14] The state arbitration act also applies to this case to the extent that its provisions do not contradict those of the FAA.[15]

 We turn then to the specific points raised by Gibson in his petition for review. They all involve questions of law and are therefore subject to de novo review. When applying de novo review "[w]e 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' " [16]

### D. Nye Lacks the Power To Unilaterally Change the Arbitration Agreement.

 Under Alaska law a contract term may be unconscionable "where . . . circum-

stances indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party." [17] We agree with Gibson that the employment contract with Nye was a contract of adhesion and that the disparity of bargaining power requirement is satisfied.

Gibson contends that the "unreasonably favorable" condition is also met. He argues that Nye had the power to change the arbitration clause unilaterally. In reaching this conclusion he relies on the second paragraph of the Employee Acknowledgement and Agreement quoted above.[18] He claims that the arbitration agreement contained in paragraphs five and six of the Acknowledgement and Agreement falls within the language of paragraph two that permits Nye to change at any time "any and all policies and practices" expressed in the handbook. Gibson cites numerous authorities that hold that clauses giving one party to an arbitration agreement the authority unilaterally to change its terms are unconscionable and unenforceable.[19]

Nye does not take issue with the proposition that the unilateral power to change an arbitration agreement would be unconscionable. Instead, Nye argues that it does not

11. *Id.* § 2.

12. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (interpreting 9 U.S.C. § 2) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the Federal Arbitration Act].") (emphasis omitted).

13. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

14. AS 09.43.010–.180; AS 09.43.300–.595; *Modern Constr., Inc. v. Barce, Inc.,* 556 P.2d 528 (Alaska 1976); *see also Dep't of Pub. Safety v. Pub. Safety Emp. Ass'n,* 732 P.2d 1090, 1093 (Alaska 1987) ("The common law and statutes of Alaska evince 'a strong public policy in favor of arbitration.' " (quoting *Univ. of Alaska v. Modern Constr., Inc.,* 522 P.2d 1132, 1138 (Alaska 1974))).

15. *See Volt Info. Scis., Inc. v. Bd. of Trs.,* 489 U.S. 468, 476–79, 109 S.Ct. 1248, 103 L.Ed.2d 488

(1989) (holding that FAA does not preempt state laws governing arbitration where those laws do not "undermine the goals and policies of the FAA").

16. *Lexington Marketing Group, Inc. v. Goldbelt Eagle, LLC,* 157 P.3d 470, 472 (Alaska 2007) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)) (reviewing de novo the superior court's decision finding an arbitration clause unenforceable).

17. *Municipality of Anchorage v. Locker,* 723 P.2d 1261, 1265–66 (Alaska 1986).

18. See text accompanying footnote 1.

19. Among the cases cited by Gibson are *Net Global Marketing, Inc. v. Dialtone, Inc.,* 217 F. Appx. 598 (9th Cir.2007); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir.2003); *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 384 (S.D.N.Y.2002); *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 694 (2000).

have the power to change the arbitration agreement unilaterally. Nye contends that the power-to-change clause of paragraph two of the Acknowledgement and Agreement refers to policies and practices detailed in the first forty-three pages of the handbook and not to the arbitration agreement that is expressed in paragraphs four and five of the Acknowledgement and Agreement. Nye notes that paragraph two of the Acknowledgement and Agreement asserts that the handbook is not a contract and that this differentiates the policies set out in the handbook from paragraphs four and five of the Acknowledgement and Agreement, which are in the form of an agreement. Nye also contends that to the extent that the change clause may suggest that it applies to the arbitration agreement, it does not do so with sufficient clarity to be effective. For this point Nye relies on *Jones v. Central Peninsula General Hospital.*[20] There we held that an employer's personnel policy manual modified an employee's at-will status and that a purported disclaimer in the manual was ineffective to prevent the modification because it did not "clearly and conspicuously" so provide.[21]

We think that the positions of both parties are at least reasonably arguable. In support of Gibson's position, the arbitration agreement is contained in the handbook and is arguably a "policy" within the meaning of the clause permitting Nye to make unilateral changes. On the other hand, the arbitration agreement is separated from the rest of the handbook and is located under the Acknowledgement and Agreement caption. What is acknowledged under this caption is receipt of the handbook and an understanding of its terms, including that they may be unilaterally changed. But what is agreed to is arguably separate: the arbitration paragraphs and, in paragraph three, the fact that the nature of the employment with Nye is and will continue to be at-will unless a specific writing provides otherwise.

Given this ambiguity, we think that the arbitration agreement is best seen as not subject to the unilateral change clause. Several interpretative principles support this view. An interpretation that gives a lawful and effective meaning to the terms of a contract is to be preferred over an interpretation that leaves a contract or a part of a contract unlawful or of no effect.[22] Given the prevalence of the view that arbitration clauses that may be changed unilaterally are unconscionable, this rule of interpretation supports an interpretation that paragraph two in the Acknowledgement and Agreement does not govern the arbitration agreement. Similarly, given the strong public policies favoring arbitration, an interpretation that permits arbitration is to be preferred over one that would frustrate arbitration.[23] Further, because Nye drafted the agreement, the interpretation of it that is most favorable to Gibson should be adopted.[24] This principle operates, if anything, more strongly in cases of adhesive contracts.[25] Finally, the approach taken by this court in *Jones* indicates that only clear and conspicuous language in an employment manual would suffice to negate a contract created by the manual. Paragraph two of the Acknowledgement and Agreement does not satisfy this test.

**20.** 779 P.2d 783, 787–88 (Alaska 1989).

**21.** *Id.* at 787 (quoting *Leikvold v. Valley View Cmty. Hosp.,* 141 Ariz. 544, 688 P.2d 170, 174 (1984)).

**22.** *See* Restatement (Second) of Contracts § 203(a) (1981).

**23.** *See id.* § 207 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred.").

**24.** *See id.* § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). We interpret this principle to operate within the reasonably possible choices of contract meaning. We do not think that this principle goes further to prefer a choice that is so favorable to the drafter that it may be regarded as unconscionable in cases where a conclusion of unconscionability is sought by the non-drafter. *Contra Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002).

**25.** *See Burgess Constr. Co. v. State,* 614 P.2d 1380, 1384 (Alaska 1980) ("Any ambiguity in an objectionable adhesive term will be seized upon and construed most strictly against the drafter.").

### E. The $50,000 Appellate Threshold Is Unconscionable but Severable.

Gibson contends that the clause in the arbitration agreement that provides that "[a]wards exceeding $50,000.00 ... shall be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator" is unconscionable. He contends that it is so seriously one-sided in favor of the employer as to be unreasonable. Gibson contends that the $50,000 appellate threshold ignores the possibility that a worker may have a claim with a potential value of well over $50,000 yet receive either no award or an award falling under the $50,000 threshold. In such cases the worker would be deprived of an appeal, whereas in cases in which an employer stands to lose $50,000 or more the employer has a right of appeal. Gibson also cites a number of cases in which similar appellate thresholds have been found to be unconscionable.[26]

Nye argues that the $50,000 threshold provision is not unreasonably one-sided. It contends that Nye might make claims against employees that could result in large awards. Nye offers as an example a case in which a management employee might discriminate against customers to whom Nye would be legally liable; in that event Nye might wish to seek reimbursement from the employee.

■ We believe that Gibson has the better of this argument. The case upon which Gibson places primary reliance, *Little v. Auto Stiegler, Inc.,*[27] seems directly on point. In *Little* the employer, another auto dealer, sought to defend a provision in an arbitration agreement that contained a $50,000 threshold identical to the language in the threshold clause in this case.[28] The court found the threshold clause unconscionable and ordered it severed from the arbitration agreement:

> From a plaintiff's perspective, the decision to resort to arbitral appeal would be made not according to the amount of the arbitration award but the potential value of the arbitration claim compared to the costs of the appeal. If the plaintiff and his or her attorney estimate that the potential value of the claim is substantial, and the arbitrator rules that the plaintiff takes nothing because of its erroneous understanding of a point of law, then it is rational for the plaintiff to appeal. Thus, the $50,000 threshold inordinately benefits defendants. Given the fact that Auto Stiegler was the party imposing the arbitration agreement and the $50,000 threshold, it is reasonable to conclude it imposed the threshold with the knowledge or belief that it would generally be the defendant.[29]

We agree with this rationale. We also think that the cases in which arbitration will be sought by an employer against an employee are so much less frequent than cases in which the employee is pursuing a claim that this possibility does not serve to refute Gibson's charge of unreasonable one-sidedness.

■ Nye alternatively argues that if the appellate threshold clause is found to be unconscionable it can and should be severed, leaving intact the rest of the arbitration agreement. Gibson disagrees, arguing that doing so would permit Nye and others to attempt to impose without penalty unconscionable arbitration agreements on those with whom they deal. Although this argument has some force, we reject it for the following reasons. This is the first case decided by this court involving an attempt to force an unconscionable arbitration remedy on an employee. We have no reason to think that Nye and other employers will ignore the precedent created by this opinion. If in future cases similar unconscionable clauses are sought to be enforced despite our ruling in this case, severance might not be appropriate. For the present, however, the strong public policy favoring arbitration points to

---

**26.** Gibson cites *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003); *Worldwide Insurance Group v. Klopp,* 603 A.2d 788 (Del.1992); and *Zak v. Prudential Property & Casualty Insurance Co.,* 713 A.2d 681 (Pa.Super.1998).

**27.** 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003).

**28.** *Id.* at 983.

**29.** *Id.* at 985.

imposing a severance remedy so that arbitration may take place.

### F. Requiring Gibson To Pay Arbitration Costs Is Inconsistent with the AWHA.

Although Gibson argues that the arbitration agreement requires him to pay half of the costs of arbitration, the arbitration agreement is actually silent on the question of costs. The FAA likewise does not address the question of costs.[30] Alaska's Revised Uniform Arbitration Act provides that the arbitrator shall decide how arbitration costs will be paid in the absence of a provision in the arbitration agreement.[31] Regardless of the apparent uncertainty as to how arbitration costs might actually be apportioned, the parties seem to have an understanding that the expected apportionment of arbitration costs in cases of this nature would be a fifty/fifty split. We accept this understanding for the purposes of this case.

It is uncertain what the costs of arbitration might be. A report to the superior court signed by Gibson's counsel following consultation with Nye's counsel states that "[t]he parties believe they will need five (5) trial days, with 2.5 days allocated to each party." The fee that might be charged by a retired superior court judge acting as an arbitrator is not in the record. But we understand that a reasonable charge would be at least $1,000 a day. Considering the additional possibility of room, reporter, and transcript costs, and the time spent after the hearing for the arbitrator to analyze the evidence and write a decision, the arbitration costs could easily exceed $6,000.

■ The question, then, is whether requiring Gibson to be liable for half of these costs is inconsistent with the AWHA. We answer this question in the affirmative. The

AWHA does not require wage and hour claimants to pay forum costs other than the court filing fee of $150.[32] This sum contrasts with the uncertain but much greater forum costs for which Gibson would be liable in arbitration. The stated objective underlying the AWHA is to protect "the health, efficiency, and general well-being of workers."[33] To achieve this end, the AWHA contains provisions that are designed to deter employers from violating the act and to encourage employees to take action to remedy violations.[34] Imposing substantial forum costs would run counter to the latter strategy.

The courts of a number of jurisdictions have reached the same conclusion with respect to attempts to force arbitration of claims based on remedial statutes. The leading case is *Cole v. Burns International Security Services*.[35] The district court in *Cole* compelled the arbitration of a claim brought under Title VII of the Civil Rights Act of 1964. On appeal, one issue was whether the employer could require the employee to pay part of the arbitration costs. The court of appeals answered in the negative:

> Because public law confers both substantive rights and a reasonable right of access to a neutral forum in which those rights can be vindicated, we find that employees cannot be *required* to pay for the services of a "judge" in order to pursue their statutory rights.... In our view, an employee can never be required, as a condition of employment, to pay an arbitrator's compensation in order to secure the resolution of statutory claims under Title VII (any more than an employee can be made to pay a judge's salary). If there is any risk that an arbitration agreement can be construed to require this result, this would surely deter the bringing of arbitration and constitute a *de facto* forfeiture of the

---

30. 9 U.S.C. § 1 *et seq.*

31. AS 09.43.480(d) provides: "An arbitrator's expenses and fees, together with other expenses, shall be paid as provided in the award."

32. Alaska R. Admin. P. 9(b)(1) (2008).

33. AS 23.10.050(2).

34. *See Bobich v. Stewart,* 843 P.2d 1232, 1238 n. 9 (Alaska 1992) (explaining that the purpose of the one-way fee-shifting provision of the AWHA is "to encourage employees to press wage-and-hour claims"); *McKeown v. Kinney Shoe Corp.,* 820 P.2d 1068 (Alaska 1991) (voiding private settlement of AWHA claims because its waiver of punitive damages violates public policy).

35. 105 F.3d 1465 (D.C.Cir.1997).

employee's statutory rights. The only way that an arbitration agreement of the sort at issue here can be lawful is if the employer assumes responsibility for the payment of the arbitrator's compensation.[36]

The California Supreme Court followed *Cole's* lead with respect to cost sharing in *Armendariz v. Foundation Health Psychcare Services, Inc.*[37] The California court ruled:

> [C]onsistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.[38]

Nye argues that a decision of the United States Supreme Court decided after *Cole* and *Armendariz, Green Tree Financial Corp.-Alabama v. Randolph,*[39] precludes a bright-line rule against employment arbitration agreements that require employees to pay a share of arbitration costs.[40] In *Green Tree* the plaintiff was a borrower who filed suit against her lender under the federal Truth in Lending and Equal Opportunity Acts. She argued that the arbitration clause that she had signed was not enforceable because its silence as to the payment of arbitration costs created an unacceptable risk that she would be made to pay high costs and this possibility would deter her from vindicating her federal statutory rights. The Supreme Court rejected this claim, noting that "[t]he 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."[41] The Court held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."[42]

 If *Green Tree* applied to this case, a remand would be necessary for a preliminary evidentiary hearing as to whether prospective arbitration costs imposed on Gibson would be so large as to interfere with vindication of his rights under the AWHA. But we conclude that *Green Tree* does not apply. That case has been interpreted as being applicable only to the arbitration of federal

---

**36.** *Id.* at 1468 (footnote omitted) (alterations in original). The court in *Cole* outlined five conditions that must be satisfied if an arbitrable forum is to be substituted for a judicial one with respect to statutory claims. The arbitration agreement must (1) provide for neutral arbitrators, (2) provide for "more than minimal discovery," (3) require a written award, (4) provide for all "types of relief that would otherwise be available in court," and (5) "not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id.* at 1482. Under such circumstances, the court concluded, "an employee who is made to use arbitration as a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

**37.** 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000).

**38.** *Id.* at 687. The California Supreme Court in *Armendariz* also generally endorsed the five conditions imposed by *Cole*, see *supra* note 36, in the

context of claims brought under California's Fair Employment and Housing Act:

> We emphasize at the outset that our general endorsement of the *Cole* requirements occurs in the particular context of mandatory employment arbitration agreements, in order to ensure that such agreements are not used as a means of effectively curtailing an employee's FEHA rights.... [I]t is for the courts to ensure that the arbitration forum imposed on an employee is sufficient to vindicate his or her rights under the FEHA.

*Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 682 n. 8.

**39.** 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

**40.** At oral argument Nye's counsel may have changed Nye's position regarding *Green Tree*, stressing that a bright-line rule is bad policy even if not strictly prohibited by *Green Tree*.

**41.** *Id.* at 91, 121 S.Ct. 513.

**42.** *Id.* at 92, 121 S.Ct. 513.

rather than state statutory claims.[43] Further, the FAA, which of course does apply to this case, permits state law defenses to arbitration on generally applicable contract law grounds—that is, grounds not specifically hostile to arbitration. Here, our conclusion that a contract requiring an employee to pay arbitral costs is unenforceable because it is contrary to the policies of the AWHA is not specific to arbitration. Rather, any contract requiring the waiver of substantive rights afforded by the AWHA may be declared void on that basis.[44]

For these reasons we reject Nye's argument that we are precluded from ruling that employment arbitration agreements are per se invalid if they require employees to pay arbitration costs greater than the court filing fee. We are not required to adopt *Green Tree's* case-by-case approach either by *Green Tree* or the FAA. As a matter of state policy, we think a bright-line rule is preferable to obviate litigation in every case as to the effect of cost splitting. Arbitration is thought to be beneficial because it is faster and cheaper than court litigation. *Green Tree's* case-by-case approach tends to undercut these benefits.

Having concluded that the possibility that Gibson might be required to share substantial arbitration costs is unacceptable, it follows that he cannot be forced to arbitrate his claim in this case unless, on remand, Nye agrees that it will be responsible for all of the arbitration costs. Because of the strong public policy favoring arbitration, we think giving Nye this option is preferable to ruling that this case may not be arbitrated.

## III. CONCLUSION

REVERSED and REMANDED for further action in accordance with the views expressed in this opinion.

---

**43.** *See Stutler v. T.K. Constructors Inc.*, 448 F.3d 343 (6th Cir.2006).

**44.** *See McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068, 1071 (Alaska 1991) (finding private settlement of liquidated damages claim under AWHA contrary to policy of AWHA and therefore void).