UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL 588, Plaintiff–Appellee,

v.

FOSTER POULTRY FARMS, Defendant–Appellant.

No. 94–16152.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 6, 1995.*

Decided Dec. 18, 1995.

As Amended on Denial of Rehearing Jan. 30, 1996.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Marc A. Smyer, Orrick, Herrington & Sutcliffe, San Francisco, California, for the defendant-appellant.

Donald C. Carroll, Carroll & Scully, San Francisco, California, for the plaintiff-appellee.

Before: Harry Pregerson, Melvin Brunetti, and T.G. Nelson, Circuit Judges.

PREGERSON, Circuit Judge:

Foster Poultry Farms ("Foster") appeals the district court's summary judgment confirming an arbitration award in favor of the

United Food and Commercial Workers Union, Local 588, UFCW, AFL–CIO ("Union"). The arbitrator found that Foster had violated the collective bargaining agreement ("CBA") by unilaterally implementing a drug testing program for its drivers and by discharging two employees pursuant to the drug testing program. The arbitrator ordered reinstatement of the two employees and temporarily rescinded Foster's drug testing program until such time as Foster bargained with the Union over certain non-mandatory and discretionary aspects of Foster's drug testing program. Foster contends that the arbitration award violates the alleged public policy embodied in the regulations promulgated by the Federal Highway Administration of the Department of Transportation ("DOT") mandating various forms of drug testing for commercial motor vehicle operators. *See* 49 C.F.R. §§ 391.81–391.123.[1] We have jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under 28 U.S.C. § 1331. We affirm. There are no grounds to vacate the arbitrator's award in this case.

## BACKGROUND

Foster is an employer engaged in an industry affecting interstate commerce within the meaning of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151, 152(2) and (7). Effective February 18, 1991, Foster and the Union entered into a collective bargaining agreement covering wages, hours, and other conditions of employment. Section VII of the CBA contains a Grievance and Arbitration procedure whereby Foster and the Union agree to settle by arbitration any dispute as to the interpretation and application of the CBA.

A dispute arose between Foster and the Union over Foster's drug testing program. Without bargaining with the Union, Foster unilaterally implemented a random drug testing program to comply with the DOT regulations mandating various forms of drug testing for commercial vehicle operators. *See* 49 C.F.R. §§ 391.81–391.123.[2]

Under the DOT regulations, an employer must conduct random annual drug testing of 50% of its drivers. 49 C.F.R. § 391.109. The regulations provide, in relevant part, that any person who tests positive for drug use without being able to show "by clear and convincing evidence" that the "controlled substance" was medically prescribed, shall be "medically unqualified" to operate a commercial motor vehicle. 49 C.F.R. §§ 391.95(b) and (c), 391.97.[3]

The DOT regulations, however, do not require an employer to terminate an employee who tests positive for drug use. The regulations only prohibit an employee from driving a commercial motor vehicle. The DOT grants an employer broad discretion in how to deal with an employee who tests positive for drug use. The DOT contemplates that such issues as discipline and rehabilitation should be resolved by the labor negotiation process.

As the DOT explained when it issued its regulations:

It is understood that broad rehabilitation opportunities and job security for employees, without regard to the manner of detection of drug use, may help those drivers who are unable to help themselves. However, the FHWA [Federal Highway Administration] believes that the comprehensive testing program of commercial motor vehicle drivers combined with an employee

---

1. The DOT promulgated the regulations pursuant to its authority under section 12005(a) of the Commercial Motor Vehicle Safety Act of 1986, 49 App.U.S.C.A. § 2505(a), Pub.L. 99–570, 100 Stat. 3207–171 (October 27, 1986). The 1986 Act supplemented the Motor Carrier Safety Act of 1984, 49 App.U.S.C. § 2505, Pub.L. 98–554, Title II, § 206, 98 Stat. 2834 (October 30, 1984). The 1986 Act, in turn, was supplemented by Title V of the Omnibus Transportation Employee Testing Act of 1991, 49 App.U.S.C. § 2717(a), Pub.L. 102–143, Title V, § 5(a), 105 Stat. 952, 959 (October 28, 1991). These statutes were repealed by

Pub.L. 103–272, § 7(b), 108 Stat. 1379 (July 5, 1994) and replaced by 49 U.S.C.A. §§ 31136 and 31306.

2. These regulations were upheld by this court as constitutional. *Int'l Bhd. of Teamsters v. Department of Transportation*, 932 F.2d 1292 (9th Cir. 1991).

3. A person who refuses to be tested is deemed to test positive for drug use and cannot be permitted to operate a commercial motor vehicle. 49 C.F.R. § 391.95(d).

assistance program to educate and train all personnel, is the most effective approach to promote safety and will reduce drug use in the motor carrier industry.... This rule [however] neither prohibits a motor carrier from assigning a driver to a non-driving duty nor requires the driver to use vacation time, sick leave or leave without pay in order to accommodate that person's rehabilitation activities. Issues such as termination, reassignment, hiring of temporary drivers to fill a position, or policies regarding a driver's absence are, the FHWA believes, *issues that are appropriately the subject of labor-management negotiations* and are not issues to be addressed in this rulemaking action.

53 Fed.R. 47,148 (November 21, 1988) (emphasis added).

Foster terminated the first two employees who were randomly selected for drug testing. The first employee, Brian Bowen, tested positive for drug use. Bowen maintained that the chain of custody procedures were not properly followed in his case. The second employee, Robert Folie, refused to be tested. Folie incorrectly believed that Foster was required to provide 24–hour advance notice to employees selected for drug testing. Apparently, Folie did not participate in the educational and training program required by the DOT regulations.

The Union challenged the employees' terminations and Foster's right to implement the drug testing program unilaterally through the collective bargaining grievance procedure. The Union maintained that the random drug testing program could not be implemented until such time as Foster agreed to bargain with the Union on the method by which the program would be carried out and the consequences to employees who test positive for drug use. The Union did not contest the reasonableness of the random drug testing program required by the DOT regulations.

Foster maintained that its random drug testing program was mandatory under the DOT regulations. Foster, however, *agreed to arbitrate* the issue of whether the unilateral implementation of the program and subsequent termination of its two employees violated the terms of the CBA. Foster did not agree to arbitrate any statutory issues.

At the arbitration hearing, Foster argued that its actions in unilaterally implementing the drug testing program did not conflict with the CBA. According to Foster, the CBA grants it the exclusive right to manage its business and direct its work force so long as Foster's actions do not conflict with the CBA.

The arbitrator rejected Foster's arguments. The arbitrator found that Foster had breached the CBA in failing to notify the Union of its intention to implement the drug testing program and in failing to bargain with the Union over the non-mandatory and discretionary elements of the drug testing program. As the arbitrator explained in her order:

> Drug testing vitally affects employees' contractual rights to be discharged only for just cause. Accordingly, under the clear language of the [labor] agreement, the right to manage and direct does not privilege unilateral implementation of such a policy.... As a remedy, the Employer must put the Union and Grievants where they would have been but for the contractual breach.

Having found that Foster had breached the CBA, the arbitrator ordered Foster to reinstate the two employees and to rescind temporarily the drug testing program until such time as Foster bargained with the Union over such non-mandatory and discretionary aspects as discipline and rehabilitation. In justifying the appropriateness of these remedies, the arbitrator noted:

> [The] public policy, as expressed in the DOT regulations, prohibits operating a vehicle under the influence of drugs or alcohol. Those regulations express no public policy permanently enjoining the employment of persons who have ever used such substances. The public policy concern thus does not determine whether such persons should be reassigned to non-driving duties, disciplined, or discharged.

Thereafter, the Union filed a complaint in the district court to confirm the labor arbitration award under 29 U.S.C. § 185. Be-

fore the district court, Foster sought to vacate the arbitrator's award. Foster alleged that the award violated public policy and was in manifest disregard of the law. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of the Union and confirmed the arbitrator's award.

## ANALYSIS

█ We review de novo the district court's grant of summary judgment. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). In this circuit, because federal labor policy strongly favors the resolution of labor disputes through arbitration, " '[j]udicial scrutiny of an arbitrator's decision is *extremely* limited.' " *Stead Motors v. Automotive Machinists Lodge,* 886 F.2d 1200, 1208 n. 8 (9th Cir.1989) (en banc), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990) (emphasis in original) (citations omitted). *See also Federated Dept. Stores v. United Food & Commercial Workers Union, Local 1442,* 901 F.2d 1494, 1496 (9th Cir.1990) ("The scope or review of an arbitrator's decision in a labor dispute is extremely narrow").

█ A court must limit its review " 'to whether the arbitrator's solution can be rationally derived from some plausible theory of the general framework or intent of the agreement.' " *Van Waters & Rogers, Inc. v. Int'l Brotherhood of Teamsters,* 56 F.3d 1132, 1135 (9th Cir.1995) (quoting *Desert Palace, Inc. v. Local Joint Executive Bd. of Las Vegas,* 679 F.2d 789 (9th Cir.1982)). An arbitration award must be confirmed "[a]s long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority." *Id.* at 1136 (quotations and citation omitted) (emphasis added). We are "not empowered to second-guess the arbitrator's findings." *Id.* at 1135.

As we have explained:

The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the [collective bargaining agreement]. If, on its face, the award

represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

*Stead Motors,* 886 F.2d at 1209 (quoting *Sheet Metal Workers Int'l Association v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir.1988)).

█ We, however, have recognized three *narrow* exceptions to the general rule of deferring to an arbitrator's decision:

(1) when the arbitrator's award does not "draw its essence from the collective bargaining agreement" and the arbitrator is dispensing "his own brand of industrial justice"; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy.

*Federated,* 901 F.2d at 1496 (citations omitted). *See also Stead,* 886 F.2d at 1205–1212.

█ Foster does not argue on appeal that the first two exceptions apply to this case; nor can the arbitration award be challenged on these grounds. There is no question here that Foster's unilateral implementation of the non-mandatory and discretionary aspects of the drug testing program and the subsequent termination of its two employees are proper subjects for arbitration. Foster's actions implicate conditions of employment, and the collective bargaining agreement here provides that all labor disputes implicating the CBA must be settled through the grievance and arbitration procedures set forth in the contract.

█ Further, both Foster and the Union agreed to arbitrate the issue of whether Foster's actions in unilaterally implementing the drug testing program and in subsequently terminating the two employees violated the CBA. Because the arbitrator only decided the issues agreed to by the parties, it cannot be said that the arbitrator exceeded her authority in ordering the employees reinstated and in temporarily rescinding the drug testing program. And, because the arbitrator relied solely on the CBA in finding that

Foster had violated the CBA, the arbitrator's award "draws its essence from" the agreement.

The only issue remaining on appeal, therefore, is whether the public policy exception applies to this case. Foster contends that the arbitrator's award violates the public policy embodied in the DOT regulations. The district court disagreed.

"[T]he question of public policy is ultimately one for resolution by the courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (citations and quotations omitted). "[C]ourts should be reluctant to vacate arbitra[tion] awards on public policy grounds." *Arizona Electric Power Cooperative, Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir.1995) (citing *Misco*, 484 U.S. at 43, 108 S.Ct. at 373 (there is no "broad judicial power to vacate arbitration awards as against public policy")). As we have explained:

> The parties [to a collective bargaining agreement] did not bargain for a court's judgment. They bargained for an arbitrator to tell them what was "just cause" for discharge and what was not. In so doing, they chose a method of resolving their differences and definitively interpreting their bargain. Each side obtained certain advantages from the arrangement. Neither had the right to believe that it could refuse to honor an arbitrator's award simply because it was disappointed by or disagreed with the result in a particular case.

*Stead Motors*, 886 F.2d at 1217.

To vacate an arbitration award on public policy grounds, we must (1) find that "an explicit, well defined and dominant public policy" exists here and (2) that "the policy is one that specifically militates against the relief ordered by the arbitrator." *Arizona Electric Power*, 59 F.3d at 992 (quoting *Stead Motors*, 886 F.2d at 1212–1213). "General considerations of supposed public interest" do not trigger the public policy exception. *Stead Motors*, 886 F.2d at 1210 (quotations and citations omitted). The party seeking to vacate the arbitration award bears the burden of showing that the arbitration award

violates an "explicit, dominant and well-defined" public policy. *Id.* at 1211.

Foster contends that the public policy embodied in the DOT regulations are sufficiently "well defined and dominant" to trigger the public policy exception. There is no question that the DOT regulations articulate a "well defined and dominant" public policy prohibiting employees who test positive for drug use from *driving* commercial motor vehicles.

The DOT regulations, however, do not express "an explicit, well-defined and dominant" public policy permanently enjoining the employment of commercial motor vehicle drivers who test positive for drug use. The DOT regulations only prohibit employees who test positive for drug use from operating commercial motor vehicles; the DOT regulations do not require that such employees be automatically discharged.

Here, the arbitrator ordered reinstatement of Bowen and Folie based on the fact that Foster had refused to bargain with the Union over the non-mandatory and discretionary aspects of its drug testing program. Because the DOT regulations do not make it illegal to reinstate employees who test positive for drug use, it *cannot* be said that the DOT regulations "specifically militate[ ] against the relief ordered by the arbitrator" in this case. *Stead Motors*, 886 F.2d at 1212–1213.

The DOT regulations also do not express a public policy prohibiting employers from bargaining with unions over non-mandatory and discretionary aspects of the drug testing program. Although implementing a random drug testing program is mandatory and failure to do so may subject an employer to various penalties,[4] there is no indication in the relevant statutes, the legislative history, or the regulations themselves that the drug testing requirements were intended to preempt already existing collective bargaining agreements or to eliminate an employer's duty to bargain under federal labor laws.

In fact, the DOT expected employers to bargain in good faith with employees and their unions over the non-mandatory aspects

---

4. *See* 49 U.S.C. § 521.

of the drug testing regulations which DOT left to the employer's discretion. *See* 53 Fed.Reg. 47,148 (November 21, 1988). As the DOT explained when issuing the regulations, "[i]ssues such as termination, reassignment, hiring of temporary drivers to fill a position or policies regarding a driver's absence from a position are, the FWHA believes, issues that appropriately are the subject of labor-management negotiations and are *not* issues to be addressed in this rulemaking action." *Id.* (emphasis added).

In these circumstances, the arbitrator's award, requiring Foster to reinstate the two discharged employees and to bargain over such matters as discipline, reassignment, and rehabilitation, does not violate the public policy embodied in the DOT regulations. Because the arbitrator's award is consistent with the DOT regulations, the public policy exception does not apply in this case.

## CONCLUSION

As set forth above, there are no grounds to vacate the arbitrator's award in this case. We AFFIRM the district court's summary judgment confirming an arbitration award in favor of the Union.

AFFIRMED.