113 F.3d 1240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO,
Plaintiff/Counterclaim Defendant-Appellee,
v.
ALOHA AIRLINES, INC., Defendant/Counterclaim
Plaintiff-Appellant. (Two Cases)
 No. 96-15088, 96-16662.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 8, 1997.*
Decided May 14, 1997.
 
 Appeal from the United States District Court for the District of Hawai'i, No. CV 95-0096 HG; Helen Gillmor, District Judge, Presiding.
 Before: NORRIS, HALL, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Because these two appeals stem from the same incident and raise the same issue, we dispose of them together in this Memorandum. Aloha Airlines, Inc. (Aloha) asks us to vacate as against public policy two arbitration awards by the Aloha Airlines System Board of Adjustment (Board) under the Railway Labor Act (RLA), 45 U.S.C. §§ 151-188. In both cases, the Board ruled in favor of the Association of Flight Attendants, AFL-CIO (Union) and against Aloha by reinstating a discharged Aloha employee. The district court (in separate cases before different judges) granted summary judgment in favor of the Union enforcing the Board's decision, and denied Aloha's cross-motion to vacate the awards. We have jurisdiction under 28 U.S.C. § 1291, and affirm.
 
 Background
 
 3
 The facts are not in dispute. Aloha fired flight attendants Janice Hirashima and Martin Souza for their conduct in connection with a July 26, 1994 flight. The aircraft, a Boeing 737-400, initially carried four flight attendants, as required by the Federal Air Regulations (FAR), 14 C.F.R. § 121.391.
 
 
 4
 En route to Maui, Hirashima was depressed about family matters and told Souza, the supervising flight attendant, that she was not feeling well. She asked Souza if, upon arrival, she could leave the plane to make a telephone call. Souza later suggested that Hirashima simply remain in Maui, where she lived, and not return to work for the flight back to Honolulu. After the passengers disembarked in Maui, Hirashima left the plane. Five minutes later she called Souza from within the airport, and Souza again encouraged her to remain. She did. Aloha Flight 229 returned to Honolulu with only three flight attendants, in violation of the FAR. Souza never informed the pilot or Aloha of Hirashima's absence, and the flight log indicated Hirashima's presence on the flight. Hirashima was paid for the day.
 
 
 5
 When Aloha later learned of Hirashima's departure, it discharged her and Souza, and informed the Federal Aviation Administration (FAA) of the violation. The FAA took no action against either employee. However, pursuant to its collective bargaining agreement with Aloha, the Union filed grievances on behalf of both Souza and Hirashima, which went to arbitration before the Board. In Hirashima's case, the Board found that she had engaged in serious misconduct. However, it ruled that her long tenure, her impaired mental state at the time of her misconduct, her acceptance of responsibility, and her efforts to seek medical treatment warranted her reinstatement as a flight attendant after medical clearance. Her prior absence from work was converted into a suspension and she was given an additional two week suspension.
 
 
 6
 In a separate proceeding, the Board found that Souza had been aware that his conduct violated the FAR and company policy. However, the Board found that Aloha had inconsistently disciplined employees for violations of rules and regulations, and that Souza's expressions of remorse and acceptance of responsibility were persuasive. It awarded Souza reinstatement, but without back pay. Dissatisfied with the Board's awards, Aloha refused to reinstate either employee. These actions followed.
 
 Discussion
 
 7
 We review de novo a district court's decision to grant summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Federal court review of adjustment board awards under the RLA is "among the narrowest known to law." English v. Burlington N. R.R., 18 F.3d 741, 743-44 (9th Cir.1994) (citation and internal quotation marks omitted) (limiting review to three grounds stated in 45 U.S.C. § 153 First (q) and to constitutional challenges); Edelman v. Western Airlines, Inc., 892 F.2d 839, 842 (9th Cir.1989). Nonetheless, as with any illegal contract, we will not enforce labor arbitration awards that violate public policy, and "the question of public policy is ultimately one for resolution by the courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 43 (1987) (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers, 461 U.S. 757, 766 (1983)).
 
 
 8
 This public policy exception to the finality of arbitration awards, however, is limited. In this circuit, a reviewing court may not vacate an arbitration award as against public policy unless: (1) there is an explicit, well defined and dominant public policy; and (2) this public policy specifically militates against the relief ordered by the arbitrator. Arizona Elec. Power Co-op., Inc. v. Berkeley, 59 F.3d 988, 992 (9th Cir.1995) (citing Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1212-13 (9th Cir.1990) (en banc)).[1]
 
 
 9
 In cases involving reinstatement of discharged employees, we have repeatedly held that our inquiry focuses not on whether the employee's underlying conduct violated public policy, but rather on whether there is a specific public policy contrary to awarding reinstatement. In Amalgamated Transit Union v. Aztec Bus Lines, 654 F.2d 642, 644 (9th Cir.1981) (per curiam), we enforced an arbitrator's decision to reinstate a bus driver who knowingly drove a bus with faulty brakes because we found there was no statute "which would make it illegal to employ bus drivers who have previously shown bad judgment." Sitting en banc in Stead Motors, we enforced an arbitrator's reinstatement of a mechanic who, in contravention of instructions from his supervisor, recklessly failed properly to tighten lug bolts on the wheels of a car. We noted that "there has been no showing that reinstatement violates public policy." Stead Motors, 886 F.2d at 1216 (emphasis in original).
 
 
 10
 Recently, we enforced an arbitrator's decision to reinstate two employees who had been terminated for violating their employer's random drug testing policy. United Food Workers Int'l Union v. Foster Poultry Farms, 74 F.3d 169 (9th Cir.1996). Although the employer cited federal regulations that prohibited employees who test positive for drug use from operating motor vehicles, we noted that these regulation did not require the employer automatically to discharge such employees. Id. at 174. Thus public policy did not "specifically militate[ ] against the relief ordered by the arbitrator." Id. (citing Stead Motors, 886 F.2d at 1212-13) (alteration in original).
 
 
 11
 Here, it is undisputed that Hirashima left Flight 229 with the encouragement of Souza, thereby causing Aloha's plane to be operated with fewer than the four flight attendants required by the FAR, 14 C.F.R. § 121.391. However, Aloha makes no effort to argue that the FARs or other expressions of public policy directly conflict with the Board's reinstatement of Hirashima and Souza. Nor does it attempt to distinguish our precedents. Instead, Aloha asks us to revisit our circuit's approach to the public policy exception, and to adopt the approach of other circuits by looking at whether the underlying conduct of the employees violates public policy. See, e.g., Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A., 991 F.2d 244, 252-54 (5th Cir.1993); Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 861 F.2d 665, 671-74 (11th Cir.1988). We decline this invitation.
 
 
 12
 First, we are, of course, bound by our court's prior decisions in Aztec Bus Lines, Foster Poultry Farms, and Stead Motors.[2] United States v. Garza, 980 F.2d 546, 555 (9th Cir.1992) ("It is well established ... that a panel not sitting en banc may not overturn Ninth Circuit precedent."). Further, we note that Aloha's assertion that our circuit has created an impossibly strict standard for the public policy exception is belied by federal regulations that directly bear upon the reinstatement of employees. See, e.g., 14 C.F.R. Part 121, app. I § VI(F) (permanently precluding employee who twice tests positive for drugs from performing safety-sensitive duties); 46 C.F.R. § 16.201(c) (mandating that employees who test positive for drugs be denied employment or removed from safety operations on ships). We therefore reject Aloha's arguments and enforce the arbitration awards.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We assume, without deciding, that the public policy exception, derived from arbitration cases under the National Labor Relations Act, 29 U.S.C. §§ 151-169, applies to arbitral awards under the RLA. See Union Pac. R.R. v. United Transp. Union, 3 F.3d 255, 258-60 (8th Cir.1993) (public policy exception applies in RLA cases); Northwest Airlines, Inc. v. Air Line Pilots Ass'n. Int'l, 808 F.2d 76, 83-84 (D.C.Cir.1987) (analyzing public policy exception in RLA case without discussing general applicability of doctrine to RLA cases); United Transp. Union v. Burlington N. R.R., 864 F.Supp. 138, 142 (D.Or.1994) (following Eighth Circuit's approach)
 
 
 [2]
 Aloha's attempt to use Stead Motors in its favor is unconvincing. Aloha is correct that the principal opinion in Stead Motors spoke for only a plurality of the court. However, Aloha is mistaken in arguing that a majority of the en banc panel in Stead Motors rejected the plurality's holding that the public policy exception focuses on reinstatement rather than an employee's underlying conduct. In fact, Judge Wallace, joined by two judges, agreed with the five member plurality on this point. See Stead Motors, 886 F.2d at 1288 (Wallace, J., concurring in part and dissenting in part) (criticizing Delta Air Lines, 861 F.2d at 665 and Iowa Elec. Light & Power Co. v. Local Union 204, IBEW, 834 F.2d 1424 (8th Cir.1987), for erroneous focus "on whether public policy conflicts with the discharged worker's past conduct instead of with the arbitral decision." (emphasis in original))