NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOSEPH R. DUNHAM, et al., | ) | |
| | ) | Supreme Court No. S-15068 |
| Appellants, | ) | |
| | ) | Superior Court No. 3AN-06-06338 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| LITHIA MOTORS SUPPORT | ) | AND JUDGMENT* |
| SERVICES, INC., et al., | ) | |
| | ) | No. 1491 - April 9, 2014 |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Kenneth W. Legacki, Anchorage, and Spencer J. Wilson, Public Justice, P.C., Oakland, California, for Appellants. Elizabeth P. Hodes, Davis Wright Tremaine LLP, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

This appeal arises from the superior court's denial of the appellants' request to set aside an arbitration decision. We conclude that even assuming the appellants' challenges were based on correct interpretations of the Federal Arbitration Act, the superior court correctly resolved those challenges. The superior court's decision, which is attached as an Appendix, is therefore AFFIRMED.

---

\*       Entered under Alaska Appellate Rule 214.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| JOSEPH R. DUNHAM, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| LITHIA MOTORS SUPPORT | ) |
| SERVICES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

Case No. 3AN-06-06338 CI

**OPINION & ORDER DENYING THE
MOTION TO VACATE ARBITRATORS' AWARDS**[*]

I.    **INTRODUCTION**

Joseph R. Dunham, on behalf of a class of service and parts advisors employed by Lithia Motors, Inc. ("Lithia"), appeals part of an arbitration award decided by former Judge Lawrence Card and reviewed by retired Judge Rene Gonzalez. Judge Card reviewed Mr. Dunham's claims regarding two groups of Lithia employees, managers and advisors, and determined that both groups met statutory exemptions from overtime pay under the Alaska Wage and Hour Act ("AWHA"). Mr. Dunham then filed a motion to amend the decision which Judge Card denied. The employment agreement allowed a second arbitrator, Judge Gonzalez, to review the award. Judge Gonzalez did so and affirmed Judge Card's decision. Mr. Dunham then petitioned Judge Gonzalez to rehear his decision. Judge Gonzales denied this request. Mr. Dunham now requests that

---

[*]    This decision has been edited to conform with technical rules of the Alaska Supreme Court.

the Court review and vacate the arbitrators' decisions that the Advisors were exempt from the AWHA overtime requirement. Plaintiffs are not seeking to vacate the order as to the Managers.

## II. FACTUAL AND PROCEDURAL HISTORY

Mr. Dunham and other named plaintiffs ("Advisors") filed an action in the Superior Court on behalf of themselves and all other Service Managers and Service Advisors employed by Lithia. Defendants answered on May 22, 2006. Advisors then filed an amended complaint adding a third claim for relief by certifying the plaintiffs as a class. Lithia answered this amended complaint later that month. In its answer, Lithia raised plaintiffs' signed agreements to arbitrate claims pursuant to the Comprehensive Employment Agreement At-Will and Arbitration ("arbitration agreement").

The arbitration agreements signed by the Advisors state that the employees voluntarily agree to submit claims exclusively to binding arbitration when these claims

> arise[] out of, or [] relate[] in any way to the Employee's . . . terms and conditions of employment, employment rights under state, federal, and /or common laws . . . . This includes but is not limited to . . . wage and hour claims . . . arising from, related to, or having any connection whatsoever with . . . employment by . . . the Company . . . whether based on tort, contract, statutory, or equitable law.

This paragraph then states that "[r]esolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis . . . other than such controlling law."

Pursuant to the arbitration agreements, the Superior Court granted a motion to transfer the suit to arbitration. Former Justice Compton certified the Advisors as a class and after his untimely passing the parties agreed to continue arbitration with Judge Card. In August 2010, Advisors filed a motion for summary judgment, which Judge

Card denied. Judge Card conducted the arbitration on September 27 and 28, 2010, and then allowed claimants to file written closing arguments.

On December 14, 2010, Judge Card issued his decision, finding for Lithia because the managers and Advisors met AWHA exemptions from the overtime pay requirement. Judge Card's decision regarding the Advisors was based on the AWHA exemption from the overtime pay requirement of AS 23.10.060 for a "salesman who is employed on a straight commission basis."[1] The AWHA's 2005 amendment defined the term "salesman employed on a straight commission basis" within the statute for the first time. This term was previously defined in Department of Labor regulations, but the regulatory definition could no longer be applied after the amendments were enacted because it was inconsistent with the statutory provision.[2] The Legislature's new definition, discussed below, was deemed retroactive for claims, such as the Advisors' arbitrated claims, brought under the AWHA after the definition was made effective on January 1, 2005.

The criteria listed in the statutory definition for "salesman who is employed on a straight commission basis" echoes the language employed in the federal regulations for the Fair Labor Standard Act ("FLSA"). The definition's criteria are that an employee: (A) "is customarily and regularly employed" by the employer; (B) "is compensated on a straight commission basis for the purpose of making sales or contracts for sales . . . or obtaining orders for services or the use of facilities for which a consideration will be paid by the client or customer; and" (C) has as his or her "primary duty [] making sales or contracts for sales . . . or obtaining orders for service or the use

---

[1]     AS 23.10.055(a)(9)(B).

[2]     AS 44.62.030.

of facilities for which a consideration will be paid by the client or customer."[3]  Judge Card applied the "primary duty" test from the federal regulations to the Advisors in order to determine if the Advisors were exempt from the overtime pay requirement.  Upon reviewing the evidence, Judge Card determined that "making of sales" and "obtaining orders for services" were the Advisors' primary duties.[4]

Judge Card then addressed a number of arguments regarding whether the Advisors were compensated on a straight commission basis, based on a "fixed percentage of each dollar of sales an employee makes."[5]  Judge Card found that the Advisors were paid using a fixed formula based on the revenues generated individually or as a team when conducting their primary duties.  Applying the language of the definition, Judge Card determined that the pay plan supported "adequate standards of living."  Judge Card emphasized that not every dollar in the Advisors' paychecks had to be from a straight commission for the exemption to exist.  He interpreted the exemption . . . to allow Lithia to compensate Advisors for this work using a base pay.  Judge Card then concluded that Lithia did not owe the Advisors any overtime payment because the pay plan comported with the exemptions to the overtime requirement of the AWHA.

Former Judge Rene Gonzalez issued his review of the arbitration decision on February 28, 2012.  Judge Gonzalez based his standard of review on the parties' arbitration agreement, which states that the review proceeds according to the laws and procedures applicable to appellate review of a civil judgment.  Judge Gonzalez therefore reviewed the factual findings under a "clearly erroneous" standard and the questions of law de novo.  Judge Gonzalez determined that Judge Card's findings of fact were not

---

[3]    AS 23.10.055(c)(4)(A)-(C).

[4]    *See generally* 29 C.F.R. §§ 541.700; 541.702; 541.703(a) (2010).

[5]    8 Alaska Administrative Code (AAC) 15.910(a)(16) (2011).

clearly erroneous. Judge Gonzalez then examined Judge Card's legal conclusions and agreed that he properly interpreted the AWHA and applied the facts to the statute.

In his order denying the petition for review, Judge Gonzalez considered the grounds for review in Alaska Rule of Appellate Procedure 506 and stated that [the] Advisors "merely seek a reargument and reconsideration of matters which have already been fully considered by the reviewing arbiter." On August 20, 2012, the Advisors motioned the Court to vacate both the initial decision by Judge Card and the review by Judge Gonzalez in regards to the advisors, but not the managers. Lithia responded to the motion to vacate on September 28, 2012. The Court heard oral arguments on January 30, 2013.

## III.   STANDARD OF REVIEW

The arbitration agreement signed by the Advisors states that "[t]he claims outlined shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ["FAA"], in conformity with the applicable state's Rules of Civil Procedure . . . ." "The FAA . . . 'creates a body of federal substantive law establishing and regulating' arbitration agreements that come within the FAA's purview."[6] Agreements within the FAA's purview are those "involving commerce," a requirement read broadly to encompass contracts affecting, facilitating, or relating to commerce.[7] Under Ninth Circuit case law there is a strong presumption that the FAA

---

[6]   *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (quoting *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983))).

[7]   9 U.S.C. § 2; *Fairchild & Co. v. Richmond, F&P.R.R. Co.*, 516 F. Supp. 1305, 1310 (D.D.C. Cir. 1981) (citing to United States Supreme Court decisions broadly interpreting this section).

supplies the arbitration rules; if the FAA governs the arbitration, the Ninth Circuit has previously held that the FAA will also govern the confirmation or vacation of awards.[8]

This presumption can be overcome by "a 'clear intent' to incorporate state law rules for arbitration."[9] The contractual language quoted above does not clearly encompass the Alaska Uniform Arbitration Act ("UAA"); therefore, this Court applies the FAA standard for vacating an arbitrator's award.[10]

> Under the FAA, the court may vacate an arbitrator's award:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

---

[8] *Johnson*, 614 F.3d at 1066-67 (citing *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1312 (9th Cir. 2004)).

[9] *Id.* at 1066 (quoting *Fid. Fed. Bank, FSB*, 386 F.3d at 1311); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476-79 (1989) (holding state arbitration laws apply when the parties contract to abide by the state rules and the state rules do not conflict with FAA).

[10] *But cf., e.g., Gibson v. Nye Frontier Ford, Inc.*, 205 P.3d 1091, 1095-96 (Alaska 2009) (stating the FAA and UAA apply to an AWHA claim for overtime compensation brought by an employee whose employment agreement with Ford required arbitration under the FAA).

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[11]

The only applicable basis for vacating the arbitrators' decisions here is § 10(a)(4).

The Ninth Circuit interprets § 10(a)(4) "exceeded their powers" language to [apply] when an arbitrator expresses "a manifest disregard of the law" or issues "an award that is completely irrational."[12] An arbitrator also exceeds his power when he decides issues not submitted to arbitration or exercises power that the parties did not intend him to possess.[13] Under the FAA, courts presume arbitrability when the contract contains an arbitration clause; the presumption can be rebutted by showing that there is no way to interpret the arbitration clause to cover the particular dispute.[14]

The terms "manifest disregard" and "completely irrational" are both discussed by the Ninth Circuit, the former relating to the law and the latter to the facts. An award is in manifest disregard of the law if a moving party can "show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same."[15] This requires something beyond mere error in or misapplication of the law

---

[11]    9 U.S.C. § 10(a).

[12]    *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009).

[13]    *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995); *see also Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284-86 (9th Cir. 2009); *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1002-03 (9th Cir. 2003).

[14]    *Comedy Club, Inc.*, 553 F.3d at 1284 (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)).

[15]    *Bosack*, 586 F.3d at 1104 (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (alterations and internal quotation marks omitted) (quoting *San*
(continued...)

leading to an unfavorable result.[16]  The evidence must show that the arbitrator intentionally ignored " 'well defined, explicit, and clearly applicable' " law.[17]  The "completely irrational" standard applies to vacate an award only in the narrow situation when the arbitrator's decision is not based on an interpretation of the parties' contractual agreement and intentions.[18]  Under this standard, a court does not reach the question of whether the findings of fact are correct.[19]

" 'Neither erroneous legal conclusions nor unsubstantiated factual findings justify . . . review of an arbitral award under the [FAA].' "[20]  The Ninth Circuit stated that Congress intentionally precluded an expansive review of arbitrators' decisions because parties to arbitration "trade the greater certainty of correct legal decisions . . . for the speed and flexibility" inherent in the process.[21]  Vacating an arbitrator's decision is thus limited to the circumstances laid out in § 10(a), even if the parties contract for broader

---

[15]     (...continued)
*Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961))).

[16]     *Id.* (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)).

[17]     *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1116 (9th Cir. 2012) (quoting *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004)).

[18]     *Bosack*, 586 F.3d at 1106-07.

[19]     *Id.*

[20]     *Matthews*, 688 F.3d at 1115 (alteration in original) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003)).

[21]     *Kyocera Corp.*, 341 F.3d at 998.

review.[22]  By contracting for arbitration, parties assume the risk that an arbitrator may, in good faith, misconstrue the relevant laws, or make clearly erroneous factual errors; these mistakes do not mean that an arbitrator has exceeded his authority.[23]

## IV.  DISCUSSION

### A.  The Court Applies The Same Standard Of Review To Arbitration Agreements Regarding Statutory Claims As To Agreements Regarding Contract Claims.

In oral argument, Advisors argued that an arbitrator's decision regarding statutory interpretation should be subject to a different standard of review than decisions involving contract interpretation.  The Court addresses this argument before applying the standard of review as laid out above.

"It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."[24]  In cases upholding arbitration agreements for claims under four different federal statutes, the U.S. Supreme Court "recognized that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[25]  Unless Congress or the Legislature shows the " 'intention to preclude a waiver of judicial remedies' " in the statute or its legislative

---

[22]    *Id.* at 998-1000.

[23]    *Id.* at 1003; *Bosack*, 586 F.3d at 1106-07.

[24]    *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

[25]    *Id.* (alterations, citations, and internal quotation marks omitted).

history, parties who contract to arbitrate a statutory right should have the agreement upheld.[26]

A New York district court directly addressed Advisors' argument and held that the court should apply the same standard of review to arbitration agreements in cases involving statutory rights.[27] The Second Circuit applies the "manifest disregard" standard in the same manner as the Ninth Circuit.[28] For example, the district court affirmed an award that did not grant attorneys' fees to the successful litigant under a statute with well-defined case law mandating attorneys' fees.[29] The court determined that this was not manifest disregard because the entitlement was not written directly into the statute so that it could be " 'readily perceived' " by the arbitrator applying the proper statute.[30]

The plaintiff in *Chisolm* argued that the court should apply a different standard for reviewing statutory claims.[31] The plaintiff claimed that without a looser standard of review, there was a clear risk that the requirements of the statute would not

---

[26]     *See id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

[27]     *Chisolm v. Kidder, Peabody Asset Mgmt., Inc.*, 966 F.Supp. 218, 224-26 (S.D.N.Y. 1997).

[28]     *Compare Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986), *with Bosack*, 586 F.3d at 1104.

[29]     *See Chisolm*, 966 F.Supp. at 223-24 (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 936 F.Supp. 104, 106 (S.D.N.Y. 1996)).

[30]     *Id.* at 224 (quoting *DiRussa*, 936 F.Supp. at 106-07 ).

[31]     *Id.*

be followed.[32] For example, an arbitrator may not be competent to decide the claim and will apply broad principles of a doctrine without looking at decisions applying the doctrine.[33] In deciding against the plaintiff, the court noted that Second Circuit courts have been applying the manifest disregard standard for over half a century and there is nothing in case law indicating that the standard is different for statutory claims.[34] Furthermore, the court stated that applying a broader standard to all statutory claims is unnecessary, would damage the integrity of arbitration proceedings, and would make parties less likely to sign an arbitration agreement.[35]

[I]n denying Advisors a broader standard of review[, the Court agrees with the Second Circuit court's reasoning]. The Ninth Circuit has applied the "manifest disregard" standard for just over half a century and there is no indication that this standard does not apply broadly to all arbitrable claims.[36] A broader standard of review is also unnecessary for all statutory claims, many of which do not involve complex legal issues, and there does not appear to be a basis for making this change only in employment cases.[37] Finally, Alaska and the Ninth Circuit have well-established policies

---

[32] *Id.*

[33] *Id.* at 225.

[34] *Id.* at 226-27.

[35] *Id.* at 227.

[36] *See generally San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796 (9th Cir. 1961) (applying the "manifest disregard" standard 52 years ago).

[37] *Chisolm*, 966 F.Supp. at 227.

supporting the arbitration process and a broader standard of review would damage the integrity of the process if parties were required to re-argue the case on review.[38]

**B. The Arbitration Award Does Not Violate The Public Policy Of The Alaska Wage And Hour Act Because The Act Itself Permits Certain Employees To Work Without Overtime Compensation.**

Advisors argue in their brief and in oral arguments that the arbitrators violated public policy by determining that Lithia did not owe the Advisors overtime pay. Advisors argue that the AWHA enacted public policy in favor of workers' rights and that employment contracts must always be interpreted in favor of employees. Advisors argue that the arbitrators ignored the policy that workers' rights cannot be abridged by contract or waived by employees because it would contradict the AWHA's purpose. Advisors then argue that the arbitrators ignored the policies of the AWHA by considering the Advisors' job title as commissioned salespeople when they were allegedly not.

It is not inherently inconsistent to enforce arbitration agreements relating to claims under statutes enacted to further public policy.[39] What is important is that " 'the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum . . . .' "[40] However, if the award violates public policy, then the

---

[38]　*See, e.g.*, *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003); *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660-61 (Alaska 1995).

[39]　*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27-28 (1991).

[40]　*Id.* at 28 (alterations omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).

court cannot enforce it.[41]  As federal labor policy strongly favors arbitration, the court " 'should be reluctant to vacate arbitration awards on public policy grounds."[42]

The Ninth Circuit will vacate an award on public policy grounds if it finds "that an explicit, well-defined and dominant public policy exists" and "that the policy is one that specifically militates against the relief ordered by the arbitrator."[43]  The public policy must be [made] clear by referencing laws and legal precedent.[44]  Advisors bear the burden of showing that the award violates this policy.[45]

Here, the arbitration award denies the Advisors' right to overtime compensation.  Therefore, Advisors must present laws and legal precedent creating an explicit, well-defined, and dominant public policy which specifically weighs against this denial.  Advisors must also clearly show that the award violates this policy.  As this ground for vacatur only looks at the award issued by the arbitrator, the Court does not

---

[41]    *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1111 (9th Cir. 2012) (citing *Aramark Facility Servs. v. Serv. Emps. Int'l Union, Local 1877*, 530 F.3d 817, 823 (9th Cir. 2008)).

[42]    *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173-74 (9th Cir. 1995) (alterations omitted) (quoting *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995)).

[43]    *Id.* at 174 internal quotation marks omitted) (quoting *Ariz. Elec. Power Coop.*, 59 F.3d at 992); *Matthews*, 688 F.3d at 1111 (quoting *Foster Poultry Farms*, 74 F.3d at 174).

[44]    *Matthews*, 688 F.3d at 1111 (citing *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000)).

[45]    *Foster Poultry Farms*, 74 F.3d at 174 (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1211 (9th Cir. 1989) (*en banc*)).

review the merits of the claim submitted to the arbitrators or the factual findings of the arbitrators.[46]

While the Advisors have stated a number of public policy concerns which may apply to the arbitrators' reasoning, they have not met the Ninth Circuit standard. Under the AWHA, overtime compensation is not required when an employee meets specific qualifications for exemption, such as the salesman on a fixed commission exemption at issue in this arbitration. Within the arbitrators' decisions, they determined that the Advisors met these specific qualifications and were therefore exempt from the overtime pay requirement. It cannot be said that the statute or regulations "specifically militates against th[is] relief" because the statute specifically exempts certain employees from this requirement.[47] Therefore, the arbitrators' awards do not violate public policy.

C.    **The Court Will Not Vacate The Arbitrators' Awards Because Neither Arbitrator Manifestly Disregarded The Law Nor Issued A Completely Irrational Award.**

The issue here is whether the Court should vacate the arbitrators' awards under § 10(a)(4). Advisors argue that the Court should vacate the award because the arbitrators exceeded their authority by manifestly disregarding the AWHA and making incorrect factual findings. Advisors argue that neither arbitrator strictly applied the definition of a straight commission found in 8 AAC 15.910(a)(16) and that this [failure] violates case law establishing that the interpretation must be based on the plain language of the definition. Advisors then continue to reargue their case on the merits regarding minimum guarantees, commission formulas, time off, team pay plans, performance

---

[46]    *See id.* at 173.

[47]    *Id.* at 174 (quoting *Ariz. Elec. Power*, 59 F.3d at 992 (quoting *Stead Motors*, 886 F.2d at 1212-13)).

bonuses, maximum earnings, and whether the Advisors' primary duties were sales and services.

Lithia responds that under the standards articulated by both the Ninth Circuit and the Alaska Supreme Court, Advisors failed to meet the burden required to vacate an award. Lithia argues that the Advisors do not meet the federal "manifestly disregarded" standard because the arbitrators' decisions recognized the AWHA and interpreted it, not ignored it. Lithia also argues that under Alaska law the Court can only review the arbitrators' interpretation of their authority under the arbitration agreement. Finally, Lithia argues that the Advisors cannot challenge the arbitrators' allegedly erroneous legal conclusions or factual findings under either standard.

Under federal case law, an arbitrator exceeds his power by deciding an issue not within his power, manifestly disregarding the law, or issuing a completely irrational award.[48] As the parties' arbitration agreement subjects the Advisors' claims to binding arbitration, the claims are presumed arbitrable. This leaves the question of whether the arbitrators manifestly disregarded the law or made a completely irrational decision.

> Arbitrators are not required to set forth their reasoning supporting an award. An arbitrators' award may be made without explanation of their reasons and without a complete record of their proceedings. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law.[49]

---

[48] *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009); *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 830 (9th Cir. 1995).

[49] *Bosack*, 586 F.3d at 1104 (alterations, citations, and internal quotation marks omitted).

When an arbitrator does extensively discuss and apply relevant law, the court generally will not hold that the law was manifestly disregarded.[50] Manifest disregard would require, for example, that an arbitrator decide that well-defined, clearly applicable law was inapplicable.[51] However, if a claimant could not show that a law had to be applied to the claim, then a court could not vacate the award because the arbitrator has not ignored well-defined, clearly applicable law.[52]

Both arbitrators acknowledged the AWHA as the relevant law and proceeded to interpret the [employment agreement's] terms according to the statute and relevant case law. Advisors have not pointed to evidence showing that either arbitrator acknowledged the application of the AWHA, and then intentionally decided not to apply it. Advisors instead argue that the arbitrators misinterpreted the AWHA and should not have applied federal laws and regulations, the same argument they made in arbitration. This argument and other arguments relating to statutory interpretation go to the merits of the Advisors' claims against Lithia and the legal conclusions drawn by the arbiters, not the question of the arbiters exceeding their powers. As the arbitrators did not manifestly disregard the law, the next question for the Court is whether the decision was completely irrational.

So long as there is a basis in the record for the arbitrators' decisions, they are not completely irrational.[53]

---

[50] *Id.* at 1105.

[51] *Comedy Club, Inc. v. Improv W. Assocs.,* 553 F.3d 1277, 1290 (9th Cir. 2009) (citing *Mich. Mut. Ins. Co.*, 44 F.3d at 832).

[52] *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1116-17 (9th Cir. 2012).

[53] *Comedy Club, Inc.*, 553 F.3d at 1289.

> Whether or not the [arbitrator's] findings are supported by the evidence in the record is beyond the scope of our review. The [arbitrator] is not required to provide support for [his] findings in [his] awards, or to explain [his] conclusions. We 'have no authority to re-weigh the evidence' presented to the arbitrat[or].[54]

Here, both arbitrators made specific findings, such as the Advisors' primary duties, which could form the basis for their conclusions. "[E]ven if the [arbitrator] erred by making contradictory findings of fact, this does not render the decision completely irrational."[55]

A decision is completely irrational if it does not " 'draw its essence from the agreement.' "[56] "[D]raws its essence" is interpreted as the " 'award [being] derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.' "[57] A completely irrational decision would be one which, for example, ignored controlling terms of the relevant agreements.[58] Here, the arbitrators' awards were based on the language and context of the payment plan and other evidence of the parties' intentions. For example, the arbitrators interpreted trade and warranty work as part of the Advisors' primary duty of making sales because the pay plan's commission formula used these numbers in the calculation. The arbitrators also interpreted guarantees, advances, and the base pay in the pay plan to protect the

---

[54]     *Bosack*, 586 F.3d at 1105 (citations omitted) (quoting *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003)).

[55]     *Id.* at 1106-07.

[56]     *Id.* at 1106 (quoting *Comedy Club, Inc.*, 553 F.3d at 1288).

[57]     *Id.* (quoting *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005)).

[58]     *Id.* at 1107.

Advisors' standard of living, which the AWHA promotes. Even if the Court would have interpreted the contracts differently, "[u]nder this standard of review, we do not decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the [arbitrators'] decision draws its essence from the contract."[59]

As demonstrated above, the issues decided were arbitrable, the arbitrators did not manifestly ignore the relevant law, and the decisions were not completely irrational. The arbitrators made findings of fact drawn from the agreements and the record to support legal conclusions based on the relevant laws governing the claims. Advisors' arguments are based on the [arbitrators'] interpretation of the law and the[ir] findings of fact, which the Court does not look into when reviewing arbitration awards under § 10(a)(4). Therefore, the Advisors have not presented the Court with a proper basis to vacate the arbitrators' awards and the Court will not vacate the awards issued by the arbitrators.

## V. CONCLUSION

The Court applies the same standard of review to an agreement to arbitrate a statutory claim and the awards issued by the arbitrators do not violate public policy. Upon review, the Court denies the motion to vacate the arbiters' awards because neither arbitrator exceeded the scope of his authority. First, Advisors have not shown that either Judge Card or Judge Gonzales decided an issue which was not arbitrable under the signed arbitration agreement. Second, neither arbitrator manifestly disregarded the relevant law when making his decision. Finally, the decision is not completely irrational because the decision derives from the pay plan, the arbitration agreement, and the record.

---

[59] *Id.* at 1106 (quoting *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991) (internal quotation marks omitted)).

Furthermore, the agreement between the parties stated that their claims were to be "determined exclusively by binding arbitration." The Ninth Circuit and Alaska Courts agree that when parties contract for arbitration, they take on some risk and are rewarded by efficiency and other benefits of alternative dispute resolution. Allowing for a substantial review of every arbitration decision would serve to circumvent this contractual agreement and lead to parties spending more time and money litigating an already decided issue. On the narrow grounds for review, Advisors have shown no cause for this Court to vacate the arbitration awards.

DATED at Anchorage, Alaska, this 6th day of February, 2013.

/s/ Mark Rindner
Superior Court Judge