431 F.2d 1219
 WEST COAST TELEPHONE COMPANY, a corporation, Appellee,
v.
LOCAL UNION NO. 77, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, an unincorporated association, Appellant.
 No. 23054.
 United States Court of Appeals, Ninth Circuit.
 September 23, 1970.
 
 John E. Rinehart, Jr. (argued), Hugh Hafer of Bassett, Donaldson & Hafer, Seattle, Wash., for appellant.
 James H. Clarke (argued), Lewis K. Scott and John C. Wright, Jr., of McColloch, Dezendorf, Spears & Lubersky, Portland, Or., Burton C. Waldo, of Kahin, Horswill, Keller, Rohrback, Waldo & Moren, Seattle, Wash., for appellee.
 Before HAMLEY and TRASK, Circuit Judges, and TAYLOR, District Judge.*
 HAMLEY, Circuit Judge:
 
 
 1
 West Coast Telephone Company (West Coast) brought this action in the district court to reform a collective bargaining agreement between the company and Local Union 77, International Brotherhood of Electrical Workers AFL-CIO (Union).[1] District court jurisdiction was asserted under section 301 (a) of the Labor-Management Relations Act (Act), 29 U.S.C. § 185(a). After a trial the court entered a judgment reforming the contract and the Union appeals. We affirm.
 
 
 2
 During the course of negotiating the contract the parties agreed upon new wage schedules for employees in the clerical and traffic departments of the company. Written schedules intended to manifest this agreement were included in the written contract. After the contract became effective some of the affected employees claimed that West Coast was paying less than was called for under the wage schedules. This led Union officials to file a grievance with West Coast and to meet with company representatives in an attempt to settle the question.
 
 
 3
 No settlement was agreed upon because West Coast claimed that the written wage schedules did not accurately reflect the agreement reached during the negotiations. The Union then requested that the dispute be submitted to arbitration pursuant to the arbitration clause of the contract. The company refused and, instead, filed this suit in the district court seeking reformation of the contract.[2]
 
 
 4
 The Union argues that the district court erred in denying the Union's motion to submit the dispute to arbitration.
 
 
 5
 The Supreme Court has cautioned that attempts to persuade a court to become entangled in the construction of the substantive provisions of a labor contract, through the back door of interpreting the arbitration clause, should be viewed with suspicion. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). As the Supreme Court said in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960):
 
 
 6
 "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."
 
 
 7
 Nevertheless, arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. Where the question presented is whether specified issues are arbitrable under the terms of a particular arbitration clause, it is to be answered by the court. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).
 
 
 8
 The test to be applied by the courts in determining arbitrability was stated by the Supreme Court in United Steel-workers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960):
 
 
 9
 "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
 
 
 10
 The company concedes that the Union is correctly construing the wage schedules as set out in the written contract.[3] It contends only that those written schedules do not accurately reflect the agreement reached during the bargaining negotiations. The relief the company seeks is not an adjudication that the written wage schedules mean something different than the Union contends. What it wants is a decree reforming the written wage scales to accord with the company's view as to the prior negotiated agreement.
 
 
 11
 Thus the company seeks a change in the terms of the written agreement. It can be said with positive assurance that such an issue is not arbitrable under the agreement in question. The arbitration clause of the contract expressly provides that the arbitrator "shall have no power to destroy, change, add to or delete from its terms."[4]
 
 
 12
 The district court correctly determined that the issues were not arbitrable and that the court should proceed to a consideration of the reformation issues.
 
 
 13
 The Union does not contend that the district court erred in finding that the written wage schedules did not accurately reflect the agreement of the parties. Nor does it challenge the reformed wage schedules, as set out in the judgment, as an accurate reflection of the wage schedules actually agreed upon.[5]
 
 
 14
 The Union asserts, however, that: (1) a contract may not be reformed if innocent third parties would be unfairly affected by the reformation, and (2) the employees working in the clerical and traffic departments are innocent third persons who would be unfairly affected by the reformation ordered by the court.
 
 
 15
 We think it obvious that the employees in question are not "innocent third persons" but are the very employees intended to be affected by the wage schedules in question. Moreover, since the Union does not question the court's finding as to the correctness of the reformed schedules, the clerical and traffic employees cannot be said to be unfairly affected by the reformation.
 
 
 16
 On this branch of the case the Union also argues that mere ambiguity is not a ground for reformation. The short answer is that, under West Coast's theory, correctly accepted by the district court, the dispute does not relate to a mere ambiguity, but to a failure of the written contract to record the actual agreement reached.
 
 
 17
 The Union also asserts that, assuming the dispute is not of a kind which is subject to arbitration, the proper course was for the company to redraft the contract to include the company's version of the correct wage schedules, and to present the revised contract to the Union for signature. Then, the Union urges, if the Union refused to sign the tendered contract, West Coast could go to the National Labor Relations Board with the complaint that the Union had been guilty of an unfair labor practice for refusal to bargain. In support of this view, the Union cites section 8(d) of the Act, 29 U.S.C. § 158 (d).
 
 
 18
 Assuming that this was a possible avenue of relief available to West Coast, it was not a road the company was obliged to take. District court action under section 301 of the Act may be maintained whether or not it involves conduct which arguably constitutes an unfair labor practice. Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).
 
 
 19
 Affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 In the alternative, the company sought a judicial declaration that there was no meeting of the minds and therefore no labor contract in fact exists
 
 
 [2]
 In paragraph V of the complaint West Coast alleged:
 "The written instrument executed by the parties on the 30th of December, 1966 * * * contained erroneous schedules of hourly wage increases of between 14 and 21 cents in the Traffic Department, and 15 and 26 cents in the Clerical Department, which schedules did not accurately reflect the parties' agreement as aforesaid. The error is that the rates for present employees listed in these two departments are written one line closer to the top of the page than was agreed upon and intended by the parties."
 
 
 [3]
 When the controversy first arose, West Coast seems to have taken the position that the written wage schedules could be read in accordance with the company's understanding of the agreement reached. But the company later acknowledged that the written schedule could not reasonably be read to accord with its understanding of the agreement
 
 
 [4]
 Had it been necessary, the court could have examined the bargaining history as an aid in construing the arbitration clauseSee Pacific Northwest Bell Telephone Company v. Communications Workers of America, 310 F.2d 244, 247-249 (9th Cir. 1962).
 
 
 [5]
 As a basis for making this finding, the district court had to examine the bargaining history to resolve that issue on the merits. This was not the usurpation of a function which was to be performed by an arbitrator because the court reviewed the underlying negotiations not to aid it in interpreting wage scales as written in the contract, but to determine whether the scales, as written, should be changed to reflect the actual agreement of the parties