PRINTING ·INDUSTRIES ASSOCIA-
TION OF NORTHERN OHIO,
INC., et al., Plaintiffs,

v.

INTERNATIONAL PRINTING AND
GRAPHIC COMMUNICATIONS UN-
ION, LOCAL NO. 5.6 and Graphic Arts
International Union, Local No. 546 (Li-
thographers), and Graphic Arts Inter-
national Union, Local No. 546 (Book-
binders), and Cleveland Typographical
Union, Local No. 53, Defendants.

No. C83–127 to C83–130.

United States District Court,
N.D. Ohio, E.D.

July 13, 1983.

Michael T. McMenamin, William Gorenc,
Jr., Walter, Haverfield, Buescher & Chock-
ley, Cleveland, Ohio, for plaintiffs.

Stanley D. Gottsegen, Burke, Haber &
Berick, Cleveland, Ohio, for defendants in
Nos. C83–127, C83–128 and C83–129.

Lawrence M. Oberdank, Reimer, Ober-
dank & Cowan, Cleveland, Ohio, for de-
fendant in No. C83–130.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

The above-captioned matter is before the
Court on crossed motions for summary
judgment. For the reasons discussed here-
in, Defendants' Motion for Summary Judg-
ment as to arbitrability of the instant dis-
pute is denied.

### FACTS

During a period from January 1, 1981
through May 1, 1982 the Plaintiffs, Print-
ing Industries Association of Northeastern
Ohio, Inc. and its member employers (here-
after collectively referred to as "PIANO"),
entered into collective bargaining agree-
ments with each of the above-named De-
fendant Unions ("the Unions"). Each of
these agreements contains a cost of living
adjustment ("COLA") provision whereby
employee wage rates are to be increased
according to the rise of the Consumer Price
Index Revised for Urban Wage Earners
and Clerical Workers 1967–100, New Series
for Cleveland, Ohio ("Cleveland CPI–W"),
issued by the United States Bureau of La-
bor Statistics. Such increases are to be
effected semi-annually, following publica-
tion of the Cleveland CPI–W for the
months of April and October.

Beginning sometime in the summer of
1982 an unprecedented divergence devel-
oped between the Cleveland CPI–W and the
Consumer Price Index ... for All Cities
("National CPI–W"). This divergence has

seen the former value grow to exceed the former by a mean variance of five to six times what it had been during the four previous years. Amended Complaint at 11–12.

PIANO apparently has made no COLA increase in the wage rates of the Unions' employees since April of 1982. On January 7, 1983 PIANO filed four separate Complaints for Declaratory Judgment and Reformation of Contract, claiming that the Cleveland CPI–W no longer reflects the mutual understanding and intention of the parties to provide wage increases commensurate with the inflation rate. PIANO seeks to reform the contracts by substituting the National CPI–W for the Cleveland CPI–W as a more accurate expression of the parties' true intentions. On March 22, 1983 the Unions filed Motions for Temporary Restraining Orders, seeking Court orders directing PIANO to pay COLA increases accrued through that date. Following a hearing on April 19, 1983, the parties stipulated to consolidation of the four cases, partial payment of the disputed COLA increases, and a briefing schedule for resolution of outstanding issues.

On May 9, 1983 the Unions filed their Motion for Summary Judgment as to the arbitrability of the matters in dispute. Through it they ask the Court to enter judgment against PIANO, ordering it to submit to arbitration the dispute over nonpayment of the COLA. The narrow question of whether, by law or agreement, this is properly a matter for arbitration is the sole question now before the Court.

## ANALYSIS

Defendant Unions argue that the instant matter is subject to arbitration under the express terms of the agreements between PIANO and themselves. They assert that the failure of PIANO to pay COLA increases constitutes a "grievance", "dispute", or "difference" within the terms of the respective contracts and, therefore, under the corresponding arbitration provisions, should be resolved by an arbitrator.

Plaintiff PIANO apparently concedes its liability under the collective bargaining agreements as written. It contends that the lawsuit is not about what the contracts say, but what they *ought* to say. Since making contracts say what they ought to say calls for the equitable remedy of reformation, and since reformation of these contracts is, assertedly, beyond the scope of an arbitrator's authority (under both federal law and, in one case, the terms of the contract itself), PIANO argues that this matter may not be resolved by arbitration.

Both sides cite a specific passage of the Supreme Court's opinion in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), as setting forth the proper standard for determining questions of arbitrability:

> ... [T]he judicial inquiry under § 301 [of the Labor Management Relations Act] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

363 U.S. at 582–583, 80 S.Ct. at 1353 (footnote omitted). The question in the instant case, then, is whether PIANO agreed to arbitrate this type of dispute, or agreed to invest the arbitrator with authority to grant the relief sought. As in many close cases, this apparently simple question is susceptible of two answers, each of which is at least partly correct.

It is uncontested by PIANO that nonpayment of COLA increases constitutes a violation of the terms of the collective bargaining agreements giving rise to a "grievance", "dispute", or "difference". So described, the matter clearly seems to be arbitrable. While non-payment may give rise to an arbitrable dispute, however, it is

not the singular focus of this lawsuit. PI-ANO filed its complaint on a conceptually distinct basis—namely, that the contracts do not reflect the true intentions of the parties and, therefore, should be reformed.

In Case No. C83–127, it is manifest from the arbitration provision in the agreement between PIANO and International Printing and Graphic Communications Union, Local No. 56 that PIANO did not agree to give the arbitrator authority to grant reformation: "The arbitrator will not have the authority to render a decision which will add to, subtract from, or modify the specific provisions on [sic] this contract." Amended Complaint, Exhibit "A" Part IV. In a very similar case, the Ninth Circuit Court of Appeals construed a like contract provision [*] in light of the standard set out by the Supreme Court in *Steelworkers v. Warrior & Gulf*: "Thus the company seeks a change in the terms of the written agreement. It can be said with positive assurance that such an issue is not arbitrable under the agreement in question." *West Coast Telephone Co. v. Local Union No. 77, Int. Brotherhood of Electrical Workers*, 431 F.2d 1219, 1221 (9th Cir.1970).

Moreover, the law in the Sixth Circuit is clear that arbitrators, in general, may not reform collective bargaining agreements: "This Court has consistently adhered to the principle that an arbitrator may construe ambiguous contract language, but lacks authority to disregard or modify plain or unambiguous contract provisions." *Sears, Roebuck and Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155 (6th Cir. 1982) (citations omitted). Thus, absent any authorization to arbitrators in the collective bargaining agreements involved in Case Nos. C83–128, C83–129, and C83–130, the proscription against an arbitrator reforming those agreements is effectively the same as the express proscription in the contract in Case No. 127.

PIANO asserts that the inability of an arbitrator to grant the relief it seeks precludes arbitration of this matter. The Unions contend that such inability

... is not material to the question of whether the grievance is subject to arbitration. The limitation on the arbitrator's authority goes only to the nature of the award that the arbitrator can make; it does not preclude a grievance from being submitted to arbitration merely because one party may take the position at arbitration that the collective bargaining agreement should be reformed.

Defendants' Motion for Summary Judgment at 5–6.

The distinction suggested by the Unions between arbitrability and availability of relief is, to say the least, subtle. If an arbitrator cannot reform a contract, it is difficult to imagine how he can adequately arbitrate a dispute which may properly call for reformation. The Unions' position would simply deny PIANO access to a forum in which the equitable remedy of reformation could be considered (since it did not bargain for authorization of the arbitrator to grant it), or require PIANO to wait for an arbitrator's ruling (which could not provide for reformation) and appeal it to the district court. The latter course is futile, the former unfair. This Court will compel neither.

A third alternative would be to have arbitration over non-payment and the lawsuit for reformation proceed simultaneously. If the Court were then to reform the contract, however, it might well be necessary to modify or even overrule an arbitrator's decision. This course would be both inefficient and unnecessary. Until the issue of reformation is resolved the contract terms which will eventually dictate an arbitrator's decision remain indeterminate.

Once the reformation question is decided, the only remaining task will be simply to order the parties to adhere to the contract terms established thereby, the meaning of which is not disputed. Such a non-discretionary, ministerial function lacks many of

---

[*] The Court summarized the provision in question by stating: "The arbitration clause of the contract expressly provide[d] that the arbitrator 'shall have no power to destroy, change, add to or delete from its terms'." *West Coast Telephone, infra*, 431 F.2d at 1221.

**558**

the considerations which traditionally militate against court involvement in potentially arbitrable matters. *Cf. Steelworkers v. Warrior & Gulf, supra,* 363 U.S. at 580–582, 80 S.Ct. at 1351–1352. Therefore, there would appear to be no further need for arbitration even at that time, although the Court reserves the point for possible reconsideration.

### CONCLUSION

This action comes to the Court on a complaint seeking reformation of contract. In this jurisdiction, such equitable relief is beyond the scope of an arbitrator's authority. Accordingly, Defendants' Motion for Summary Judgment on the issue of arbitrability is denied.

Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment on the Merits is due within two weeks of the date of filing of this opinion.

IT IS SO ORDERED.