**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASARCO LLC, a limited liability corporation,<br>*Petitioner-Appellant*,<br><br>v.<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf of itself and the other unions representing ASARCO LLC's bargaining unit employees,<br>*Respondent-Appellee.* | No. 16-16363<br><br>D.C. No.<br>2:15-cv-00117-SMM<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted November 16, 2017
Pasadena, California

Filed June 19, 2018

Before:  Richard A. Paez and Sandra S. Ikuta, Circuit Judges, and Robert W. Gettleman,[*] District Judge.

Opinion by Judge Gettleman;
Dissent by Judge Ikuta

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's order affirming an arbitration award in favor of a union, which sought relief concerning a pension provision in the parties' collective bargaining agreement.

The employer asserted that the arbitrator reformed the collective bargaining agreement in contravention of a no-add provision in the agreement.  The district court held that the arbitrator was authorized to reform the agreement, despite the no-add provision, based on a finding of mutual mistake.

The panel held that the employer did not properly preserve its objection to the arbitrator's jurisdiction because the employer conceded that the union's grievance was arbitrable and failed to expressly preserve the right to contest jurisdiction in a judicial proceeding.  The panel further held that the arbitration award drew its essence from the

[*] The Honorable Robert W. Gettleman, United States District Judge for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

collective bargaining agreement, and the arbitrator did not exceed his authority in reforming the agreement. In addition, the arbitrator's award did not violate public policy.

Dissenting, Judge Ikuta wrote that, in light of the no-add provision, the arbitrator exceeded his authority under the collective bargaining agreement.

## COUNSEL

Rex S. Heinke (argued), Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California; Lacy Lawrence and Marty L. Brimmage, Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas; for Petitioner-Appellant.

Michael D. Weiner (argued) and Jay Smith, Gilbert & Sackman, Los Angeles, California; Daniel M. Kovalik, United Steelworkers, Pittsburgh, Pennsylvania; Gerald Barrett, Ward Keenan & Barrett P.C., Phoenix, Arizona; for Respondent-Appellee.

## OPINION

GETTLEMAN, District Judge:

This appeal involves the validity of an arbitration award. ASARCO asserts that the award is invalid because the arbitrator reformed the Basic Labor Agreement ("BLA") between the Union and ASARCO in contravention of a no-add provision in that agreement. The Union argues that the arbitrator did not contravene the no-add provision because he was required to reform the BLA upon finding that the parties were mutually mistaken as to its terms when they

agreed to it. The district court affirmed the award, holding that ASARCO properly preserved its objection to the arbitrator's jurisdiction, but the arbitrator was authorized to reform the BLA, despite the no-add provision, based on a finding of mutual mistake. We affirm, but conclude that ASARCO did not properly preserve its objection to the arbitrator's jurisdiction.

## I.  BACKGROUND AND PROCEDURAL HISTORY

ASARCO is a miner, smelter, and refiner of copper and other precious metals with facilities in Arizona and Texas. ASARCO's employees are represented by the Union. ASARCO and the Union are parties to the BLA, which was originally effective January 1, 2007, through June 30, 2010. The BLA was modified and extended through two Memoranda of Agreement ("MOA") negotiated in 2010 and 2011.  Article 9, Section B of the BLA provides that a Copper Price Bonus ("Bonus") will be paid quarterly to employees who participate in ASARCO's pension plan. The Bonus is calculated based on the price of copper and is significant, at times as much as $8,000 annually per employee. The 2011 MOA modified Article 12, Section Q of the BLA to make employees hired on or after July 1, 2011 ineligible for ASARCO's pension plan, and thus ineligible for the Bonus. The Union, unaware of the link between the pension plan and the Bonus,[1] filed a grievance disputing

---

[1] It is undisputed that the parties did not discuss the Bonus when negotiating the 2011 MOA, and neither party indicated that the Bonus would be impacted in any way by the modification.

ASARCO's refusal to pay the Bonus to employees hired after July 1, 2011.  The case proceeded to arbitration.[2]

At the beginning of the arbitration hearing the parties stipulated that the matter was properly before the arbitrator and that the arbitrator had jurisdiction to decide the grievance.  The Union claimed there was a mutual mistake in the 2011 MOA: the parties failed to recognize that Article 9, Section C of the BLA tied eligibility for the Bonus to participation in the pension plan, and both parties intended for all employees to remain eligible for the Bonus when they negotiated the 2011 MOA.  Accordingly, the Union argued that reformation of the BLA was the appropriate remedy.  ASARCO offered no evidence to the contrary, but argued that the arbitrator lacked authority to reform the BLA because Article 5, Section I(6)(c) contained the following no-add provision: "The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement."  After hearing six days of evidence the arbitrator concluded that neither party anticipated that the 2011 MOA modification would impact new hires' eligibility for the Bonus.  Because he found that the parties were mutually mistaken as to the terms of the 2011 MOA, the arbitrator ordered that the BLA be amended to provide that new hires, though ineligible for ASARCO's pension plan, remain eligible for the Bonus.

ASARCO filed a Petition to Vacate Arbitration Award in the United States District Court for the District of Arizona.  ASARCO did not challenge the arbitrator's findings of fact or conclusions of law, but argued that the no-add provision

---

[2] Article 5, Section 1 of the BLA provides that all disputes between the parties are to be resolved through a grievance procedure that culminates in arbitration.

deprived the arbitrator of authority to amend the BLA. The district court confirmed the arbitration award, but rejected the Union's argument that ASARCO had waived any argument regarding the limits of the arbitrator's jurisdiction. In confirming the award, the district court noted the degree of deference due to the arbitrator's decision and concluded that the arbitrator did not violate the no-add provision because the reformation corrected a defect in the BLA, which was the product of mutual mistake, to reflect the terms the parties had agreed upon. ASARCO timely appeals.

## II. STANDARD OF REVIEW

Our review of a district court's decision confirming an arbitration award is de novo. *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1180 (9th Cir. 2001). "Our review of labor arbitration awards is, however, extremely deferential because 'courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" *Id.* (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)) (internal alterations omitted). Unless the arbitrator has "'dispensed his own brand of industrial justice' by making an award that does not 'draw its essence from the collective bargaining agreement,'" we must confirm the award. *Id.* at 1181 (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)) (internal alterations omitted).

The context of collective bargaining warrants this extremely limited scope of review because the parties have agreed to have their disputes decided by an arbitrator chosen by them: "[I]t is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.*

"Indeed, the mandatory and prearranged arbitration of grievances is a critical aspect of the parties' bargain, the means through which they agree 'to handle the anticipated unanticipated omissions of the collective bargaining agreement.'" *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1205 (9th Cir. 1989) (*en banc*) (quoting St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny*, 75 Mich.L.Rev. 1137, 1140 (1977)) ("*Judicial Review*") (internal alterations omitted). Such omissions occur because "[u]nlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document." *Id.*

Consequently, "[t]he labor arbitrator is the person the parties designate to fill in the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will state the parties' bargain." *Id.* He is "'their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary' to handle matters omitted from the agreement." *Id.* (quoting *Judicial Review*, 75 Mich.L.Rev. at 1140). Because of this role, the arbitrator "cannot 'misinterpret' a collective bargaining agreement," *id.*, and "even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913–14 (9th Cir. 2007) (footnote omitted). This deference applies "'even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.'" *Federated Dep't Stores v. United Foods & Commercial*

*Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990) (quoting *Stead Motors*, 886 F.2d at 1209).

## III.   ANALYSIS

Although judicial review of arbitration awards is extremely limited, the Supreme Court and this Circuit have articulated three exceptions to the general rule of deference to an arbitrator's decision: "(1) when the arbitrator's award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." *Id.* (internal quotation marks omitted). According to ASARCO, the arbitrator's award should be vacated on all three grounds. We will address each, but turn first to the Union's argument that ASARCO waived the right to contest the arbitrator's jurisdiction. According to the Union, it did so by conceding that the grievance was arbitrable and failing to expressly preserve the right to contest jurisdiction in a judicial proceeding. Although the district court rejected this argument, we agree with the Union.

### A.  Waiver

Generally speaking, the issue of arbitrability is decided by the courts. *John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 546–47, 84 S. Ct. 909, 912–13, 11 L. Ed. 2d 898 (1964). The parties may, however, agree to submit the question of arbitrability to the arbitrator. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578, 80 S. Ct. 1347, 1350, 4 L. Ed. 2d 1409 (1960). Additionally, as occurred here, the parties may stipulate that the controversy is arbitrable. If, however, a party "objects to arbitration on jurisdictional grounds, [it] may refuse to

arbitrate the case." *George Day Const. Co. v. United Bhd. of Carpenters & Joiners of Am., Local 354*, 722 F.2d 1471, 1476 (9th Cir. 1984). The party seeking arbitration is "then put to the task of petitioning the court to compel arbitration." *Id.* Alternatively, a party can "object[ ] to the arbitrator's authority, refuse[ ] to argue the [jurisdictional] issue before him, and proceed[ ] to the merits of the grievance." *Id.* at 1475. "[T]hen, clearly the [jurisdictional] question would have been preserved for independent judicial scrutiny." *Id.* "The same result could be achieved by making an objection as to jurisdiction and an express reservation of the question on the record." *Id.*

As another alternative, the objecting party can "take[ ] the initiative by seeking declaratory and injunctive relief prior to the commencement of the arbitration." *Id.* at 1476. The objecting party can take any of these steps to "obtain[ ] an independent judicial examination of the [jurisdictional] question." *Id.* The objection is not expressly preserved for judicial examination, however, when "the objection is raised, the [jurisdictional] issue is argued along with the merits, and the case is submitted to the arbitrator for decision." *Id.* at 1475. In such circumstances, "it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability." *Id.* Indeed, "an agreement to arbitrate a particular issue need not be express—it may be implied from the conduct of the parties." *Ficek v. S. Pac. Co.*, 338 F.2d 655, 656 (9th Cir. 1964). By voluntarily submitting an issue to the arbitrator, the parties "'evinc[e] a subsequent agreement for private settlement'" of that issue. *Id.* (quoting *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 809 (2d Cir. 1960)). "The rule is sometimes stated in terms of waiver: A claimant may not voluntarily submit his claim to arbitration,

await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act." *Id.* at 657 (citation omitted).

ASARCO did not exercise any of the options discussed above to expressly preserve the jurisdictional question for judicial review. Instead, ASARCO conceded that the grievance was arbitrable, then argued to the arbitrator that he lacked jurisdiction to reform the BLA in crafting a remedy. "Although [ASARCO] did suggest at the arbitration hearing that the arbitrator had no authority to [reform the BLA], it chose to argue that the arbitrator lacked authority rather than simply refusing to come to the table." *Tristar Pictures, Inc. v. Dir.'s Guild of Am., Inc.*, 160 F.3d 537, 540 (9th Cir. 1998). "'In this manner, [ASARCO] by its conduct evinced clearly its intent to allow the arbitrator to decide not only the merits of the dispute but also the question of [jurisdiction].'" *Id.* (quoting *George Day*, 722 F.2d at 1475) (internal alterations omitted).

ASARCO attempts to distinguish *Tristar* by pointing out that in that case the employer disputed the arbitrator's jurisdiction over the entire dispute, whereas ASARCO objected only to the arbitrator's authority to reform the BLA. This point is well taken, but it does nothing to salvage ASARCO's claim that it expressly preserved the question of the arbitrator's authority to reform the BLA for judicial review. As our precedent makes clear, ASARCO submitted that issue to the arbitrator when it chose to argue it before the arbitrator rather than making an express reservation of the issue and arguing only the merits of the grievance. When ASARCO argued to the arbitrator that the he lacked authority to reform the BLA, it submitted that issue to the arbitrator, and could not seek a different result from the district court. The argument was waived. Additionally,

ASARCO's decision to argue the issue to the arbitrator suggests that it never really objected to the arbitrator's jurisdiction at all, but rather objected only to the arbitrator crafting the remedy that the Union sought.

In deciding that ASARCO did not waive its right to contest the arbitrator's jurisdiction, the district court relied heavily on *Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters, Local Union 70*, 913 F.2d 736 (9th Cir. 1990). In *Van Waters* the company purchased the assets of a rival company and, as part of that purchase, agreed to offer employment to seven of the rival company's employees, all of whom were represented by Local Union 70, and to assume the terms and conditions of their Collective Bargaining Agreement ("CBA"). *Id.* at 738. The parties' CBA contained a provision that prohibited arbitration of jurisdictional disputes between Local Union 70 and any other Union, and instead mandated that such disputes would be resolved only by the Unions. *Id.* at 740. Local Union 70 filed grievances on behalf of the seven employees hired by Van Waters related to pay, benefits, and seniority status. The parties agreed to arbitrate the grievances. At the outset of the arbitration Van Waters stipulated that under Local Union 70's CBA the arbitrator did not have jurisdiction over its other employees, who were represented by a different Union, Local 287, and that the arbitrator did not have the authority to issue a ruling that would affect the employees represented by Local 287, which was not a party to the proceeding. *Id.* at 741. Van Waters used similar language to that used by ASARCO, and we held that Van Waters adequately preserved the jurisdictional question on the record and had therefore not waived the issue of arbitrability. *Id.* Although ASARCO used similar language, it did so in relation to a vastly different objection under vastly different circumstances.

*Van Waters* is thus inapposite for at least two reasons. First, Van Waters objected to the arbitrator exercising jurisdiction over an entire group of employees, Local 287, who were not parties to the proceeding and were in no way represented in the arbitration. Second, after objecting to the arbitrator's jurisdiction, Van Waters did not proceed to argue throughout the arbitration hearing how and why the arbitrator lacked jurisdiction, as ASARCO did in the instant case. Instead, Van Waters stipulated to the scope of the arbitration and proceeded to argue only the merits of its case. ASARCO, on the other hand, objected not to the scope of the arbitration and not to the arbitrator's exercise of jurisdiction over any parties, but rather to his authority to reform the BLA in crafting a remedy. After objecting, ASARCO argued at length, to the arbitrator, that he lacked such authority. By doing so, ASARCO submitted the issue to the arbitrator and "evinced a subsequent agreement for private settlement" of that issue. *Ficek*, 338 F.2d at 656 (internal quotation marks omitted). ASARCO cannot "voluntarily submit [its] claim to arbitration, await the outcome, and, [when] the decision is unfavorable, then challenge the authority of the arbitrator[ ] to act." *Id.* at 657 (citation omitted). Accordingly, we find that ASARCO waived its right to contest the arbitrator's jurisdiction.

## B. Merits

Given the great deference due to arbitrator's decisions, ASARCO wisely does not challenge the arbitrator's findings of fact or conclusions of law, but instead argues that the arbitrator's award does not warrant deference because of the following exceptions: (1) the award does not draw its essence from the BLA; (2) the arbitrator exceeded his authority in reforming the BLA; and (3) the award is contrary to public policy. *See supra* at 7–8. The first two

exceptions are interrelated, and we will address them simultaneously before turning to the third exception. ASARCO argues that the no-add provision in the BLA deprived the arbitrator of authority to reform the BLA, and the arbitrator's award does not draw its essence from the BLA because it ignores this provision.

In deciding whether the arbitrator's award draws its essence from the BLA, "the quality – that is the degree of substantive validity – of [his] interpretation is, and always has been, beside the point." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 829, 197 L. Ed. 2d 68 (2017). "Instead, the appropriate question for a court to ask when determining whether to enforce a labor arbitration award interpreting a collective bargaining agreement is a simple binary one: Did the arbitrator look to and construe the contract, or did he not?" *Id.* This is because "'[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable.'" *Id.* at 531 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)) (internal alterations omitted). Accordingly, "the court's inquiry ends" if the arbitrator "made any interpretation or application of the agreement at all." *Id.* at 531–32. We therefore "must limit [our] review to whether the arbitrator's solution can be rationally derived from some plausible[3] theory of the general framework or intent of the

---

[3] As the parties note, this Court has retired the use of the term "plausibility" when describing judicial review of labor arbitration awards. *See Drywall Dynamics*, 823 F.3d at 532. This step was taken not to "propose any substantive change to the settled law in this area,"

agreement." *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995), *opinion amended on denial of reh'g*, (9th Cir. Jan. 30, 1996).

We have no doubt that the arbitrator's decision was grounded in his reading of the BLA. The arbitrator acknowledged that new hires were not entitled to the Bonus under the plain language of the BLA and that he could not find for the Union based solely on the language contained in the BLA. He also recognized that arbitrators do not generally have the authority to rewrite CBAs or ignore their provisions. He noted, however, that arbitrators can reform a contract to correct an obvious mutual mistake. Citing a substantial amount of evidence that he heard over six days, the arbitrator concluded that the parties presented precisely this scenario: in negotiating the 2011 MOA, they never discussed or even acknowledged that if the BLA were amended to make new hires ineligible for the pension plan, they would also be ineligible for the Bonus. Although he did not specifically cite the no-add provision when explaining the basis of his award, the arbitrator did quote it directly as relevant language of the BLA and noted that, absent a finding of mutual mistake, he would not have the authority to reform the BLA.[4]

---

but rather to underscore the limited nature of the inquiry, which is whether "the arbitrator look[ed] at and construe[d] the contract." *Id.*

[4] Respectfully, the dissenting opinion is incorrect when it states that the arbitrator failed to discuss, or even mention, the no-add provision. In fact, the arbitrator discussed the no-add provision at length on pages 14 and 16 of the arbitration award, quoted it directly, and discussed the parties' positions regarding its impact. The arbitrator then

Given the arbitrator's extensive treatment of the BLA and acknowledgment of the no-add provision, we agree with the district court that the arbitrator's decision was grounded in his reading of the BLA, and are "bound to enforce the award" even if "the basis for the arbitrator's decision may be ambiguous." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764, 103 S. Ct. 2177, 2182, 76 L. Ed. 2d 298 (1983); *see also Drywall Dynamics*, 823 F.3d at 533("'[A]rbitrators have no obligation to give their reasons for an award at all,'" and a court may not "'infer the non-existence of a particular reason merely from the award's silence on a given issue.'") (quoting *Stead Motors*, 886 F.2d at 1208, 1213); *Stead Motors*, 886 F.2d at 1208 ("'[M]ere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.'") (quoting *Enterprise Wheel*, 363 U.S. at 598, 80 S. Ct. at 1361).

Upon concluding that the parties were mutually mistaken as to the impact of the 2011 MOA on new hires' eligibility for the Bonus, the arbitrator was authorized to reform the CBA despite ASARCO's protest. *W.R. Grace*, 461 U.S. at 765, 103 S. Ct. at 2183 ("Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator."). Additionally, the arbitrator was not strictly bound only to the provisions of the BLA in crafting a remedy, because "the arbitrator is entitled, and is even expected, to range afield of the actual text of the

---

acknowledged that he lacked authority to rewrite the BLA or ignore its provisions absent a finding of mutual mistake.

collective bargaining agreement he interprets." *Stead Motors*, 886 F.2d at 1206. The arbitrator was entitled to rely on a number of resources, including "'statutes, case decisions, principles of contract law, practices, assumptions, understandings, [and] the common law of the shop'" in his effort to give meaning to the BLA. *Hawaii Teamsters*, 241 F.3d at 1183 (quoting *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 595 (9th Cir. 1992)).

Applying ordinary principles of contract law, the arbitrator concluded that the proper remedy for the parties' mutual mistake was to reform the BLA to make it reflect the terms the parties actually agreed upon. *See Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1083 (9th Cir. 2007) (reformation of contract is warranted to correct mutually mistaken terms). Even if we were to conclude otherwise, "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371. Because the arbitrator was construing the BLA in light of the evidence presented to him and basic principles of contract law, his decision and award are due great deference. *See W.R. Grace*, 461 U.S. at 765, 103 S. Ct. at 2183 ("Regardless of what our view might be of the correctness of [the arbitrator's] contractual interpretation, [ASARCO] and the Union bargained for that interpretation. A federal court may not second-guess it.") (citation omitted). Although we could conceivably have reached a different result if we were to interpret the BLA ourselves, we conclude that the arbitrator's award drew its essence from the BLA.

The cases ASARCO cites to support its argument that the no-add provision left the arbitrator powerless to remedy

what he found to be an obvious mutual mistake fail to do so. First, ASARCO tells us that we need look only to one case to vacate the arbitrator's award: *West Coast Telephone*. *W. Coast Tel. Co. v. Local Union No. 77, Int'l Bhd. of Elec. Workers, AFL-CIO*, 431 F.2d 1219 (9th Cir. 1970). In *West Coast Telephone* the employer sought to reform its CBA because it contained wage schedules for certain employees that reflected wages higher than what the employer and Union had agreed upon when bargaining. *Id.* at 1220. The employer was made aware of this discrepancy when the Union filed a grievance because the employees were being paid the agreed upon wage rather than the higher wage contained in the CBA. *Id.* The Union requested the dispute be submitted to arbitration under the terms of the CBA, but the company refused to arbitrate and instead filed suit in the district court seeking reformation. *Id.* The Union moved to compel arbitration. The district court denied the motion, and the Union appealed. *Id.* This court affirmed:

> [T]he company seeks a change in the terms of the written agreement. It can be said with positive assurance that such an issue is not arbitrable under the agreement in question. The arbitration clause of the contract expressly provides that the arbitrator 'shall have no power to destroy, change, add to or delete from its terms.'

*Id.* at 1221.

ASARCO's reliance on *West Coast Telephone* is misplaced. *West Coast Telephone* did not grapple with courts' deference to arbitrator's decisions, nor did it hold that arbitrators may never, under any circumstances, reform

contracts that contain no-add provisions.[5]  It simply held that the issue of contract reformation was not arbitrable under the facts of that case because the contract contained a no-add provision.  That question is not before this court.  ASARCO attempts to discard this difference as one of inconsequential procedural posture, but here procedural posture makes all the difference.

Even assuming a court would have been obligated under *West Coast Telephone* to hold that the dispute at issue was not arbitrable, ASARCO loses because it agreed to submit the dispute to arbitration.  When ASARCO did so, it took the question of arbitrability out of the courts' hands.  Consequently, ASARCO is now faced with a nearly insurmountable hurdle given the level of deference that this court must grant to the arbitrator's decision.  Had ASARCO refused to arbitrate and instead sought relief in the district court, it is quite possible, if not probable, that the court would have followed *West Coast Telephone*.  ASARCO did not.  Instead, it stipulated that the dispute was arbitrable and argued to the arbitrator that he lacked authority to reform the BLA.  Again, ASARCO "may not voluntarily submit [its] claim to arbitration, await the outcome, and, [when] the decision is unfavorable, then challenge the authority of the arbitrator[ ] to act."  *Ficek*, 338 F.2d at 657.

The other cases cited by ASARCO are equally inapt, if not more so.  Not one of them concerns a mutual mistake made by two parties who have agreed to submit their dispute to an arbitrator, or what the proper remedy would be in such

---

[5] *West Coast Telephone* did suggest that reformation is the appropriate remedy when the provisions of a contract do not reflect the parties' agreed upon terms. *See West Coast Telephone*, 431 F.2d at 1221–22.

a situation. For the reasons discussed above, these facts matter. Additionally, ASARCO faults the Union for not seeking reformation of the BLA in the district court, but ASARCO knew all along that the Union sought reformation and was equally capable of seeking relief in the district court by simply refusing to arbitrate the issue. It did not and now cannot present the issue to this court and hope for a better outcome.

Finally, ASARCO argues that the arbitrator's award should be vacated because it violates public policy. The Union argues that ASARCO waived this argument by failing to present it in the district court. ASARCO concedes this fact, but urges that an argument first raised on appeal is not waived when the issue is purely one of law and the opposing party will not be prejudiced. *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990). Regardless of whether ASARCO's argument is waived, it fails. There is "a very limited 'public policy exception' to the stringent rule ordinarily requiring courts' enforcement of arbitrators' decisions interpreting and applying collective bargaining agreements." *Drywall Dynamics*, 823 F.3d at 533 (citations omitted). Under this exception "a court may vacate an arbitration award that 'runs contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests.'" *Id.* at 534 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)) (internal alterations omitted).

According to ASARCO, the public policy interest served by the collective bargaining process demands that the award be vacated because courts should not confirm arbitration awards that distort the product of collective bargaining – the

Collective Bargaining Agreement. Assuming ASARCO has stated an "explicit, well-defined, and dominant public policy," its argument still fails for a very simple reason. The arbitrator did not distort the BLA; he reformed it so that it no longer distorted the agreement that the parties made during collective bargaining. For the reasons discussed above, the arbitrator was authorized to do so upon finding the parties were mutually mistaken about the terms they agreed to. The award does not violate public policy.

We conclude that the arbitrator was acting within his authority when he crafted a remedy to cure the parties' mutual mistake. Consequently, even if ASARCO did not waive its right to contest the arbitrator's jurisdiction, which it did, we would defer to the arbitrator's judgment, as we must.

**AFFIRMED.**

---

IKUTA, Circuit Judge, dissenting:

The operative facts here are quite simple. The no-add provision of the collective bargaining agreement in this case says: "The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement." The pension provision of the collective bargaining agreement says: "Employees hired on and after the Effective Date are not eligible to participate in the pension plan."

Without discussing the no-add provision, the arbitrator here ordered that the pension provision be amended to include five additional lines of text:

> Employees hired on and after the Effective Date are not eligible to participate in the pension plan. *However, the Company shall treat such Employees as if they were accruing Continuous Service under the Retirement Income Plan for Hourly Rated Employees of ASARCO Inc. on the same terms as other Employees, only for purposes of determining eligibility for the Copper Price Bonus pursuant to Article 9, Section C.5 of the BLA.*

By adding to the pension provision, the arbitrator plainly exceeded the authority granted to him by the collective bargaining agreement. Can he do that? We have said no: "an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority." *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001). When issuing awards, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

In reviewing an arbitral award, we are likewise bound by express limitations on an arbitrator's authority. A court may not enforce an arbitration award if it does not "draw its essence from the collective bargaining agreement." *Federated Emp'rs of Nev., Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1264 (9th Cir. 1979). An arbitration award that violates "an express and explicit restriction on the arbitrator's power" does not draw its essence from the agreement, but rather "demonstrates that the arbitrator ignored the essence of the agreement in making the award." *Id.* at 1264–65. Because the arbitrator here ignored the

essence of the agreement by violating an express and explicit restriction on his power, the award must be vacated. *See id.*

The majority abandons these principles today based on two unreasoned conclusions. First, the majority upholds the arbitrator's award because it "was grounded in his reading" of the collective bargaining agreement. Maj. Op. at 15. On its face, this statement is dead wrong: the arbitrator did not even mention, let alone construe, the no-add provision in formulating his award.[1] Unlike in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 570 (2013), where the arbitrator based a potentially unreasonable construction of his authority on a "textual exegesis," the arbitrator here made no effort to reconcile his decision to add five lines of text to the agreement with the contract's no-add provision. The majority does not really dispute this point: it concedes that the arbitrator "did not specifically cite the no-add provision when explaining the basis of his award," but concludes it was sufficient for the arbitrator to "quote it directly" in the section of the arbitration decision entitled "Relevant Language of the BLA," which it deems to be an "acknowledgment of the no-add provision." Maj. Op. at 14–

---

[1] The Arbitration Award is divided into six sections entitled: "Background"; "Relevant Language of the BLA"; "Relevant Language of the 2011 Memorandum of Agreement": "Statement of the Issues"; "Summary of the Position of the Parties"; and "Discussion and Award." The no-add provision is mentioned in two sections of the Arbitration Award. The section entitled "Relevant Language of the BLA," sets forth the text of four subsections of the collective bargaining agreement, including one entitled "Board of Arbitration" which explains the role of the arbitrator and contains the no-add provision. The "Summary of the Position of the Parties" sets forth the opposing positions of the Union and ASARCO regarding the effect of the no-add provision. The section entitled "Discussion and Award," where the arbitrator provides his analysis and conclusion, does not discuss or mention the no-add provision.

15.    But the arbitrator's knowledge that the collective bargaining agreement contained a no-add provision is immaterial if the arbitrator failed to construe it.  Obviously, a "few references" to a key issue in dispute does not show that the arbitrator "did anything other than impose its own policy preference."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 676 (2010).    Here the arbitrator expressly stated he was reforming the agreement "in the interest of justice and fairness."    In other words, the arbitrator issued an award that "simply reflect[s] the arbitrator's own notions of industrial justice."  *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Second, the majority states that the arbitrator's award is binding because arbitrators can reform a contract to correct a mutual mistake and "to make it reflect the terms the parties actually agreed upon."   Maj. Op. at 16.   This sweeping assertion is inapposite here.   While arbitrators may have power to reform an agreement where permitted to do so by the collective bargaining agreement, the arbitrator *in this case* clearly lacked that power.  Rather, "the terms the parties actually agreed upon" in *this* collective bargaining agreement expressly state that the arbitrator may not add provisions to the agreement.    Because "an arbitrator's authority derives solely from the contract," *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 290 (1984), the arbitrator here could not add provisions to the agreement, even if there had been a mutual mistake.  The majority fails to explain why the arbitrator here could exercise a power directly contrary to the express restrictions on the arbitrator's authority.

Indeed, the majority cites no case supporting its proposition that an arbitrator can reform a contract based on mutual mistake when the parties expressly prohibit the arbitrator from adding to or modifying the agreement. To the contrary, we have held that a no-add provision prohibits an arbitrator from modifying an agreement even when there is a mutual mistake. *See W. Coast Tel. Co. v. Local Union No. 77, Int'l Bhd. of Elec. Workers, AFL-CIO*, 431 F.2d 1219, 1221 (9th Cir. 1970). In *West Coast Telephone*, we considered a union's demand to compel arbitration of the question whether its collective bargaining agreement should be reformed to reflect the parties' intent. *Id.* at 1220. We concluded "with positive assurance" that the issue of reformation due to mutual mistake was not arbitrable because "[t]he arbitration clause of the contract expressly provides that the arbitrator 'shall have no power to destroy, change, add to or delete from its terms.'" *Id.* at 1221. In other words, a no-add provision in a collective bargaining agreement precludes the arbitrator from rewriting the agreement.

The majority attempts to distinguish *West Coast Telephone* because it addressed whether a dispute over reformation was arbitrable, rather than whether the arbitrator lacked authority to reform the contract, and therefore does not definitively resolve the issue whether the arbitrator's award here drew its essence from the agreement. Maj. Op. at 17–18. But *West Coast Telephone*'s holding was based on its conclusion that a no-add provision deprives the arbitrator of the authority to modify the agreement, and this ruling is binding on us. 431 F.2d at 1221. We need not consider whether we would defer to an arbitrator who erroneously construed a no-add provision as allowing reformation of a contract in a particular case. This issue is not before us because—as mentioned above—the arbitrator

here did not construe the no-add provision. Because under our precedent the arbitrator's modification was contrary to the no-add provision and is therefore not a "plausible interpretation" of the contract, and because there is no basis for deferring to the arbitrator's construction of the no-add provision in this case, his award must be vacated.[2] *Federated Empr's*, 600 F.2d at 1265.

The arbitrator here dispensed his own brand of industrial justice by exceeding the scope of his delegated powers and modifying the agreement "in the interest of justice and fairness." Because "an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority," the award fails to draw its essence from the collective bargaining agreement. *Haw. Teamsters*, 241 F.3d at 1181. The majority today turns its back on these basic principles and our precedent. I dissent.

---

[2] The majority states that we have "retired the use of the term 'plausibility' when describing judicial review of labor arbitration awards." Maj. Op. at 13–14 n.3 (citing *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016)). But of course "a three-judge panel may not overrule a prior decision of the court," *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc), except under circumstances not met by *Drywall*. Accordingly, as the majority concedes, *Drywall* did not make any substantive change to the settled law in this area. Maj. Op. at 13–14 n.3.